MARY E. BUTRICK & others *vs.* ANDREW J. TILTON.

Essex.    December 9, 1891. — January 19, 1892.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Writ of Entry — Death of Demandant — New Demandant — Exceptions — Judgment for undivided Parts — Conveyance of Easement — Evidence of Pedigree — Presumption — Issue — Death.*

The widow of a demandant who died pending a writ of entry was *held* to be properly admitted as a demandant in his stead, under the Pub. Sts. c. 173, § 11, and c. 165, § 15; also the heir of such widow, upon her dying thereafterwards, and before the trial.

A ruling based upon an assumption found by the trial court to be erroneous affords no ground of exception.

On a writ of entry brought by several demandants, it is not essential that the court should find, or the judgment state, the amount of the undivided interest in the premises to which the individual demandants are respectively entitled.

Instruments under seal, by which the grantor quitclaims to the grantee, his heirs and assigns, "one half of the privilege of the fishing place at the Lower Sands, so called," were *held* not to be conveyances of any part of the fishing place in fee, but of easements therein, or rights of fishery merely.

On a writ of entry alleging the demandants' seisin in the usual form, various deeds to their ancestor were *held* to be admissible in evidence to prove that the demandants were tenants in common.

Upon the question whether a person dying in 1789 left issue, it was *held* that a granddaughter born in 1833 of his step-daughter who resided in his family until his death was competent to testify as to general repute in the family as to matters of pedigree; and that the presumption was that her testimony that he "left no issue," and that "she never heard that he was twice married, and never heard" that his first wife "ever had any children," was, in the absence of anything to show the contrary, responsive to proper interrogatories.

There is no presumption in law either of marriage or of birth of issue.

On the issue whether a person born in 1736 was living when a deed was made in 1810, evidence that his father who died testate in 1777 mentioned in his will all his children save this son, and that unsuccessful inquiry was made where it was probable that information of him could be found if he was alive at the time in question, is, in the absence of evidence to the contrary, sufficient to warrant a finding that he was then dead.

Evidence of family repute that a person died without issue, and of the giving of deeds to his land after his death by his collateral heirs, is, in the absence of evidence to the contrary, sufficient to warrant a finding that he died without issue.

WRIT OF ENTRY to recover a parcel of land in Haverhill. Plea, *nul disseisin.* Trial in the Superior Court, before *Thompson*, J., who found for the demandants, and allowed exceptions alleged by the tenant, which, so far as material to the points decided, appear in the opinion.

*I. W. Richardson & T. S. Dame,* for the tenant.

*H. N. Merrill & J. O. Wardwell,* for the demandants.

BARKER, J. 1. The demandants claim title by descent from Nathan Ayer, who died intestate in the year 1813, leaving five children, three of whom were ancestors of the original demandants. After action brought, two demandants died, and the widow of each came in to prosecute for her husband's share. Subsequently, one of these widows died, and her heir came in to prosecute. At the trial, the tenant asked a ruling that the heir of the widow of the deceased demandant could not recover. It did not appear that the original demandant died testate, or

that he left any other real estate than that demanded, or that his share therein was more than $5,000 in value. So far as appeared, his widow took his interest in fee upon his death, under the provisions of the Pub. Sts. c. 124, § 3, (*Proctor* v. *Clark*, 154 Mass. 45,) and was entitled under the provisions of the Pub. Sts. c. 173, § 11, and of c. 165, § 15, to come in and prosecute jointly with the surviving demandants in the same manner as if she had originally joined with them in the suit. The effect of these provisions was to place her in the same position as if her title had accrued at or before the commencement of the suit and she had been an original demandant; so that the provisions of the Pub. Sts. c. 173, § 4, with reference to presumed entry and ouster, apply, and she could recover if the original demandant, to whose right she had succeeded, had a right of entry on the day when the action was commenced. In contemplation of the statutes, she was herself a demandant, and when she died her heir in turn was properly admitted to prosecute in the same way and with the same effect. The objection that in such cases the title of the persons so admitted accrues after that of the other demandants, and that her right to rents and profits, which must be recovered in the same action, if at all, would not be the same with that of the other demandants, lies equally to the admission of the heir of an original demandant. A sufficient answer is that the recovery of rents and profits is only an incident to the recovery of judgment. *Backus* v. *Chapman*, 111 Mass. 386. The court rightly refused the ruling that the heir of the widow of the deceased original demandant could not recover.

2. The tenant requested two rulings based upon the assumption that one of the boundaries was in dispute. But the court found that the line was not in dispute, and the exceptions disclose no evidence of any such dispute, and no evidence upon the subject. Under these circumstances, the court was not prevented by any rule of law from finding that, in fact, there was no such dispute, and we cannot revise rulings based upon an assumption which the court found to be erroneous.

3. The court refused rulings based upon the theory that it must find for the tenant, unless it could find what undivided portion each demandant was entitled to recover; and that the finding and judgment must show to what undivided portion of the prem-

ises each demandant was entitled. The details of the evidence are not stated with sufficient fulness to enable us to know what proportion of the estate each demandant claimed, or whether, upon the evidence, there were questions of law which might make it uncertain, as between themselves, what proportion each was entitled to, while it might be clear upon the same evidence that each had an undivided interest, and that all of them together had the interest found by the court, and were so entitled to recover that undivided interest. The finding was that they recover eighty-two two-hundred-and-twenty-fifth parts. Under the Pub. Sts. c. 173, § 7, two or more persons claiming as tenants in common may join in a suit for the recovery of lands, and under § 10 may recover any undivided portion to which they prove title. We see no reason why the tenant should have the right to require the judgment to specify the proportions of the several demandants; no injury to him is shown by the omission so to do, nor is it the usual practice. So far as we are aware, the judgment in such cases is for the undivided portion to which the demandants collectively are entitled. *Kelley* v. *Meins*, 135 Mass. 231. These requests were properly refused.

4. In order to establish their title, it was necessary for the demandants to prove, among other things, that the locus passed by inheritance from Jacob Ayer, who died in 1789, to his heirs. Two instruments under seal were in evidence, executed by him on May 29, 1769, in one of which he quitclaimed to certain persons and their heirs and assigns forever, " one half of the privilege of the fishing place at the Lower Sands, so called, in Haverhill," and in the other " one half of the fishing priviledge at ye Lower Sands, so called, in Haverhill," and it was shown that the Lower Sands included the river shore of the demanded premises. The tenant asked the court to rule that each of these instruments conveyed a fee in the premises. This request was rightly refused. The instruments are in the form of articles of agreement. The grantees in each are given the privilege of fishing at the place, but only in a certain specified manner. They respectively can use but one seine, and the grantor stipulates that but two shall be used at the whole place, and that he will allow a convenient way to pass and repass, and binds himself and his heirs in a penal sum to abide by the agreement. In the second

agreement, he also binds himself to find and provide for the grantees a good and sufficient seine, of a specified size, with a good fishing boat and oars, and have them always ready in the fishing season yearly; and he is to receive one half of the catch. The agreements were not conveyances of the fishing place, but of easements or rights of fishery. A river fishery, however plentiful the salmon and shad might then have been, was carried on during only a very limited portion of the year, and could require no such continuous, exclusive, or permanent occupation or use of the land as to imply an intent to grant the whole interest in the soil. *Johnson* v. *Rayner*, 6 Gray, 107, 110. *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159, 164.

5. Whatever title Nathan Ayer had, he acquired by three deeds to himself, made in 1810 and 1811 by a sister, some nephews, and a niece of Jacob Ayer, of all the right that they respectively had in any estate, real or personal, belonging to the estate of Jacob Ayer. These deeds were admitted in evidence, against the tenant's objection that they were not admissible under the pleading to prove tenancies in common. In support of his exception, the tenant argues that the demandants allege seisin as joint tenants. As the allegation of seisin is in the usual form, namely, that the demandants " were seised of the messuage as aforesaid, with the appurtenances, in their demesne, as of fee within twenty years last past," and does not specify a joint tenancy, there is no ground for this exception.

6. In order to show that the deeds mentioned conveyed interests in the premises, it was necessary for the demandants to prove that Jacob Ayer left no issue. Mrs. Butrick, a demandant, was called upon this point. It appeared that she was born in the year 1833, Jacob Ayer having died in 1789, and that she was the granddaughter of his step-daughter, her grandmother having been the daughter by a former husband of Jacob Ayer's second wife, and having resided in his family up to his death. It also appeared that the witness was the granddaughter of Nathan Ayer, who was a cousin or grand-nephew of Jacob Ayer, and who in Jacob's lifetime married his said step-daughter, and lived in Jacob's house and took care of him at the time of his death. The bill of exceptions states that this witness "testified, against the tenant's objection, after the court ruled that her tes-

timony was admissible for that purpose, and to which ruling the tenant excepted, that Jacob Ayer left no issue, and on cross-examination stated that she never heard that he was twice married, and never heard that the first wife of Jacob ever had and children." The witness was clearly a member of the family, and interested to know its connections and relationships, and competent to testify as to general repute in it as to matters of pedigree. This justified the ruling to which exception was taken. The tenant argues that because she stated that Jacob Ayer left no issue, when in the nature of things that statement could not have been of her own knowledge, her testimony was not competent. But it does not appear what question elicited the statement, or that exception was taken to the question or to the answer. The statement may well have been given in answer to a question as to the general repute in the family upon that point; and, it not appearing that any exception was taken but the one stated, which was before the witness testified, and upon the admissibility of evidence from her upon the point generally, it is to be presumed that her testimony, taken with the question, was competent.

7. In order to show the proportion of Jacob Ayer's estate which passed to Nathan under the three deeds, it was material to show whether Jacob Ayer's brother Joseph died before him, and without issue. It appeared that they were sons of Peter Ayer, who died testate in 1777, and who had seven children, and that Joseph Ayer was born in 1736. There was also evidence that Peter Ayer's will made no mention of Joseph, while all of his other children were given something in it; and that no mention of Joseph's death was found in the records of Haverhill, where his birth was recorded, or by an examination of headstones, and other search and inquiry for information as to his death, and as to whether he left issue. The tenant introduced no evidence upon the question, and asked a ruling that there was not sufficient evidence to show that Joseph died before the date of the deeds to Nathan. The evidence of the unsuccessful inquiry where it was probable that information could be found if Joseph had been living up to 1810, when he would have been seventy-four years of age, and the failure of his father to mention him in his will, which was evidence of the

same nature, were sufficient to authorize a finding of his death. There is no presumption of marriage, or of the leaving of issue. *King* v. *Fowler*, 11 Pick. 302.

8. The remaining exception is as to the sufficiency of the evidence that Jacob Ayer died without issue. Upon this point, also, the tenant introduced no evidence, and the court was clearly justified in finding, upon the evidence of repute in the family and of the three deeds above referred to, made in 1810 and 1811 to Nathan Ayer, that Jacob died without issue.

*Exceptions overruled.*