AUGUSTUS MARSCHALL & others *vs.* JOHN A. AIKEN & others, executors.

Suffolk.    November 11, 1897. — November 24, 1897.

Present: ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Partnership — Exceptions.*

If the evidence in a case tried without a jury did not require, as matter of law, findings which would call for the giving of rulings refused, no ground of exception is shown.

CONTRACT, upon an account annexed, against the executors of the will of L. C. Durkee, for goods alleged to have been sold and delivered, in May, 1894, to the firm of L. C. Durkee and Company. Trial in the Superior Court, without a jury, before *Hardy*, J., who allowed a bill of exceptions, in substance as follows.

The items of the bill of particulars, and the sale and the delivery of the goods to J. C. Murray, assuming to do business as L. C. Durkee and Company, were not in dispute. The following facts were in evidence. L. C. Durkee, the defendants' testate, was the owner of a one and a half story building at 259 Friend Street, Boston, and had for seven or eight years carried on the business of a retail liquor dealer at that place. Before and at the time of the sale of the goods by the plaintiffs, there was on the upper part of the store a sign of " L. C. Durkee, Importer of Montrose Gin "; on each of the window panes was the name of " L. C. Durkee "; and in full view, hanging on the wall, was a liquor license dated May 1, 1893, and expiring May 1, 1894, issued by the Board of Police Commissioners of Boston, bearing the name of " L. C. Durkee " as licensee.

Horace J. Gray, one of the defendants, was called as a witness by the plaintiffs, and testified that he was the " business manager " for L. C. Durkee in connection with the business 'in this store prior to May, 1894; that he " attended to his matters for him at his request "; that he took care of the financial part of Durkee's business entirely during the last few months of his life, and took care of all of the Boston business for him, and he appeared to leave everything with him; that he was employed at 259 Friend Street until March 26, 1894, and continued to stay there until about April 30, 1894, as manager in the interest of Durkee; that on March 26, Durkee signed a bill of sale of the business and stock at the store, and executed a lease of the store for five years to J. C. Murray, who paid $1,000 down; that the trade was not consummated until April 30, until which time Gray was instructed to look after Durkee's interests, and he did so; that Murray might have called in the store between those dates; that the witness never took any steps toward removing the signs upon the building and the windows; that he collected the rent of the store for Durkee from Murray afterwards, and was by the store several times in May, 1894; that he never gave notice to anybody that Durkee had ceased to do business at that store; that there was nothing upon the building or in the store to show that Murray was the proprietor of the store; that in the spring of 1894, Durkee was unable to attend to business, and had been residing some years

at Northfield, and had been blind for eight or nine years prior to his death, which occurred in August, 1894; that when the witness signed an application for a license for the year 1894, as hereinafter stated, he did so as manager, without specific instructions from Durkee; that he told Durkee that he had made an application for a license, but it did not appear that the terms of the application were communicated to Durkee; and that subsequently to March 26 Durkee resided at Northfield, and did not return to Boston, and the witness did not take any active charge of this business until his death.

David H. DeBoer, a salesman for the plaintiffs, testified that he had seen Durkee' in the store at 259 Friend Street in 1893, and had sold him one bill of goods there about January or February, 1893; that he had been in the store several times during the year 1894; that he was there a couple of times in April, and saw a city license in that store, upon which the name L. C. Durkee appeared, in May; and that in April he saw the sign of L. C. Durkee over the door, and of L. C. Durkee upon the window, and the same signs were there when he went into the store about the 1st or 2d of May, 1894, and when he sold the goods in question about May 6.

Upon this evidence, the plaintiffs asked the judge to rule as follows: " If L. C. Durkee permitted his name and sign to remain on his store, he is responsible to all persons who gave credit to him on that account in the usual course of business as carried on at that place." This request was refused, because " in the form presented it does not apply to the facts in the case."

Gray also testified that, prior to the execution of the bill of sale and the lease of the premises from Durkee to Murray, and while negotiations between them were pending relative to the transfer of the store, he had made an application to the Board of Police Commissioners for a license to carry on the liquor business at this store, and signed the names of L. C. Durkee, Oscar F. Durkee, and J. C. Murray on the application to do business as L. C. Durkee and Company; and that he made this application under what he supposed were the general instructions of Durkee to protect the business, in order that, the application being "a blanket application," in case of the death of L. C. Durkee, the survivor might carry on the business, or in case

of sale the purchaser might carry it on.   The clerk of the Board of Police Commissioners produced the books and records of that board, and the application, which was received on March 14, 1894, and testified that the application was granted on April 27, 1894, and the license delivered some time in the latter part of May or first part of June, 1894.

Upon this point, the plaintiffs requested the judge to rule as follows: " The fact that Durkee took out a license is evidence of partnership, if his name appears upon it."   This request was refused by the judge, " because I do not find that he took out a license."

Gray testified further, that he ran the store for Durkee until April 30, 1894, charging Murray for rent from March 26, 1894, and collected the rent for it afterwards, and told Durkee; that from May, 1893, to the time of Durkee's death he was employed by Durkee; and that Durkee told him to remain in the store until Murray had paid the full amount of money, and that he was to run the business until Murray should pay, and Durkee also told him to buy the goods the same as he always had, and, if Murray paid the remainder of the cash, to turn over the profits to him, deducting the expenses, which was done on April 30, 1894.

The plaintiffs asked the judge to rule as follows: " If Gray was Durkee's agent, the signing of the application in the name of L. C. Durkee and others, doing business as L. C. Durkee and Company, is evidence of a partnership."   The judge refused this request, " because I do not find that Gray had authority as agent to bind Durkee as a partner with Murray in the application for a license."

DeBoer, the plaintiffs' agent, also testified that he was in the store a couple of times or more in April, and asked for Durkee, and somebody in the store informed him that Durkee was away, and said that Murray was running the business; and that he asked for Durkee, and was told by some one in the store that Murray was a partner.

The plaintiffs asked the judge to rule as follows: " If DeBoer was told in the store in April, 1894, at that time carried on by Durkee, that Murray was a partner, he has a right to rely upon it."   This request was refused by the judge, " because I do not

find that any one in the store had authority to make such a statement as would bind Durkee."

The plaintiffs also requested the judge to rule, "If Durkee held himself out as an ostensible partner, he is bound by the statements and acts of Murray," which request was allowed.

It was in evidence that the plaintiffs' agent received a card in the store, at the time of making the sale, upon which was L. C. Durkee, J. C. Murray, L. C. Durkee & Co. Gray testified that he first learned of the use of this card by Murray on June 18, 1894, and on such information at once notified Murray to discontinue such use, and also gave public notice in newspapers that Murray had no right to use such names; and that this was done by order of Durkee, who was first informed of such use of his name on June 18, 1894.

The plaintiffs requested the judge to rule as follows: "The signing of the application for a license, the name on the building, the name on the windows, the statements by people in Durkee's store to DeBoer, and the neglect to remove the signs or give notice, is sufficient evidence to hold L. C. Durkee as an ostensible partner." This request was disallowed, on the ground that the judge did not find the facts such as to bind Durkee by reason of the acts of Gray or others in the store.

The judge found for the defendants; and the plaintiffs alleged exceptions.

*H. L. Whittlesey*, for the plaintiffs.

*H. I. Cummings*, (*W. E. Hutchins* with him,) for the defendants.

BARKER, J. The action was tried without a jury, and the exceptions are to refusals to rule in accordance with requests refused, either because the presiding justice found that they did not apply to the facts in the case, or because he did not find the facts to be as assumed in the requests. In strictness, this alone would require us to overrule the exceptions, as the question is not raised whether, as matter of law, upon the evidence, facts to which the rulings requested would be applicable, or the facts assumed in the requests should have been found. Upon such requests and exceptions to the refusals to give them, we cannot revise the findings of fact upon which the refusals were based. *Pratt* v. *Amherst*, 140 Mass. 167. *Butrick* v. *Tilton*, 155 Mass. 461.

But if in the present case we assume that all the evidence is stated, and that the question is raised whether the requests were applicable to the facts which, as matter of law, should have been found, we find no error.

With reference to the first request, to the effect that if the defendants' intestate permitted his name and sign to remain on the store, he is responsible to all persons who gave credit to him on that account, in the usual course of business as carried on at that place, it is enough to say that there was no evidence which required a finding that the plaintiffs' agent so gave credit to him.

As to the two next requests, the evidence did not require a finding that the intestate took out the license, which was assumed as a fact in the second request, nor that the person who applied for the license had authority to bind the intestate as a partner in the application for license.

As to the fourth request, it was based upon statements said to have been made by somebody or some one in the store, without further identification of the persons, or in any way connecting them with the intestate, save by their mere presence in the store, and there was nothing to require a finding that the persons making the statements had authority to bind the intestate.

The evidence that the plaintiffs' agent received in the store at the time of making the sale a card purporting to indicate that the intestate was a partner, in connection with the evidence that he was himself away from Boston and blind, and that his agent first learned of the use of this card long afterward, and at once forbade its use and gave public notice that the name was not rightfully used, and in connection with the other evidence in the case, did not require a finding that there had been any neglect to give notice, or any holding out of the intestate as a partner by himself, or with his knowledge or assent. The whole evidence did not require a finding of such facts as to bind the intestate by reason of the acts of the one person who had some authority from him, or of others in the store, and justified the disallowance of the last request.

The presiding justice was justified in finding that the intestate was never a partner, that he had no interest in the business when the plaintiffs' sale was made, and had not been held out as

a partner or as interested by any one authorized to bind him. Whether in any event the leaving of his name and sign upon the store after he had sold out would have justified a finding that he was still interested in the business in any way, we need not inquire, as no such finding was made.     *Exceptions overruled.*