## MARY E. BUTRICK & others, petitioners.

Essex.    December 18, 1903. — February 25, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Partition.    Disseisin.    Evidence,* Of ancient deeds, Extrinsic affecting writings. *Deed,* Registration, What included by.    *Practice, Civil,* Auditor's report.    *Judgment.*

Under Pub. Sts. c. 178, §§ 14, 15, (R. L. c. 184, §§ 8, 9,) the persons interested in the land of which partition is sought, who have a right to appear in the proceedings, include persons who had been in possession of portions of the land for nearly twenty years when the petition was brought and have been in such possession more than twenty years at the time of the trial and have erected buildings and made other valuable improvements on the land.

The bringing of a writ of entry against the occupant of land, before the expiration of the twenty years of his possession by reason of which the occupant claims title by disseisin, does not interrupt his possession, where the action has not been prosecuted to judgment and it appears that the tenant ultimately must prevail.

Where it is shown that a deed, dated in 1776, was found in the possession of an heir of one of the grantees, and various records of the Probate Court tend to show that the possession and claim of title of the parties to the deed was for a long time in conformity with it, the deed may be admitted in evidence without formal proof of its execution.

Whether the provisions of Pub. Sts. c. 120, §§ 7, 8, 13, (R. L. c. 127, §§ 10, 11, 16,) as to the manner of proving and certifying for record an unacknowledged deed after the death of the grantor, apply to a deed executed in 1776 and recorded in 1896, *quære.*

An unrecorded deed is competent evidence to show that the premises thereby conveyed were not included in certain later deeds executed by some of the heirs of the grantor by which they released and transferred all right and interest which they had in any estate real and personal of their ancestor, the grantor of the unrecorded deed.

An auditor, who was not directed to report the evidence taken before him, concluded his report as follows: "The testimony is in four volumes marked . . . All said exhibits and testimony are hereby referred to for full particulars as to all matters therein contained and shown." *Held,* that the reference in the sentence last quoted did not make the evidence a part of the auditor's report.

A judgment, in reference to collateral rights of the parties not necessarily included in the action, is conclusive only as to matters which were put in issue and adjudicated.

In proceedings upon a petition for partition, where there were a number of petitioners and a number of respondents, it appeared, that all the petitioners but one had brought a writ of entry against one of the respondents. *Held,* that the petitioner who was not a party to the writ of entry could not avail himself of a judgment upon it, but that the judgment was conclusive between all the other petitioners and that respondent who was the tenant in the real action.

KNOWLTON, C. J.   This is a petition, filed October 12, 1893, under Pub. Sts. c. 178, for partition of two parcels of land in Haverhill, between the Merrimac River and Washington and River Streets.   They are parts of a larger lot which formerly belonged to Jacob Ayer of Haverhill, who died intestate in 1790. The petitioners contend that the premises belonged to Jacob Ayer at the time of his death, and were conveyed afterwards by his heirs to one Nathan Ayer, and that they are some of the heirs at law of Nathan.   This is their only claim of title.   None of the petitioners nor any of their ancestors, so far as appears, was ever in possession of any part of the property.   Until within the last thirty years the land has been used as a fishing place, extending for a considerable distance along the shore of the river.

The respondents appeared under the Pub. Sts. c. 178, § 14, (R. L. c. 184, § 8,) as persons interested in different portions of the premises described in the petition, and severally averred that they were in possession of the portions described in their several answers and were the sole owners thereof in fee simple, and denied that the petitioners, or any of them, were seised of the premises or of any part thereof, or entitled to possession, or to maintain their petition.   To each of the answers a replication was filed by the petitioners under the Pub. Sts. c. 178, § 15, (R. L. c. 184, § 9,) averring that the respondent has no estate or interest in the premises; and praying judgment if he shall be admitted to object.   The case was referred to an auditor who filed an elaborate report, and it was then heard before a judge of the Superior Court without a jury.   It was found by the auditor that the lands are now nearly all occupied with buildings, and that they had been in the possession of the several respondents and those under whom they claim, for nearly twenty years before the bringing of this petition, and more than twenty years before the trial, subject to a question as to the effect of a writ of entry now pending, brought December 24, 1889, by all but one of the petitioners against one of the respondents, to recover one of the parcels.*   In addition to their

---

* There was a previous writ of entry between the same parties for the possession of another lot, brought in November, 1884, in which in December, 1891, the demandants obtained judgment.   The earlier writ of entry was before this court at different stages as reported in 141 Mass. 93 and 155 Mass. 461.

claim of a title by adverse possession the respondents set up a deed made by the guardian of Jacob Ayer, dated December 25, 1776, whereby he conveyed the premises under authority of the court to John Mulliken, Nathaniel Marsh and Bailey Bartlett, all of Haverhill. Jacob Ayer was then insane, and afterwards remained so as long as he lived. This deed was introduced, not as showing title in the respondents, but to show that Jacob Ayer did not own the property at the time of his death, and that therefore the petitioners acquired no title under the deed from his heirs to their ancestor, Nathan Ayer. The auditor and the judge found in accordance with the contention of the respondents in this particular.

At the trial, after the evidence had all been heard, the petitioners, under their replications, asked the judge to rule that the respondents have no interest in the premises within the meaning of the Pub. Sts. c. 178, §§ 14, 15, (R. L. c. 184, §§ 8, 9,) and that they are not entitled to object to the partition. This request raises the first question for our consideration.

1. The interest of the respondents, as disclosed by the evidence, was that of persons in possession who had erected buildings and made other valuable improvements, and who had been in possession nearly twenty years when the petition was brought, and more than twenty years at the time of the trial. The auditor's report indicates that each of the later occupants held the property "under a title which he believed to be good," and that he therefore comes within the Pub. Sts. c. 178, § 31 (R. L. c. 184, § 19).

The purpose of § 15 seems to be to relieve petitioners from the necessity of a trial upon objections made by persons not named in the petition as respondents, if it appears that they have no estate or interest in the lands. For that purpose there may be a preliminary hearing to determine whether the person appearing has an interest. If the whole case is heard and the evidence concluded upon all questions affecting the rights of the petitioners and the respondents, the reasons for this provision are no longer applicable. Whether one holding a mere possessory title of recent origin should be deemed to have an interest under this section, is a question not free from difficulty, and which it is not necessary in this case to decide. As was said by

Chief Justice Shaw in *Marshall* v. *Crehore*, 13 Met. 462, 467, a petition for partition is made by our statutes " to a much greater extent than formerly, an adversary proceeding, to try and decide controverted questions of title." The case of *Cook* v. *Allen*, 2 Mass. 462, which was decided under St. 1783, c. 41, and St. 1786, c. 53, holds that one claiming a title by disseisin is a proper party to such a proceeding. . See also *Munroe* v. *Luke*, 19 Pick. 39. There are peculiar reasons why one who has made improvements, holding under a title which he believes to be good, ought not to be refused an opportunity to be heard. Under § 31, above referred to, he is not only entitled to receive compensation for his improvements, but he is liable for the petitioner's share of the rents and profits, and these are to be ascertained in the suit. The proceedings in the present case would make this section applicable if the petitioners' evidence entitled them to a decree for partition.

The case of *Tilton* v. *Palmer*, 31 Maine, 486, relied on by the petitioners as tending to show that the respondents ought not to be heard, is an adjudication in a different form of proceeding. It is under a statute which makes a different kind of provision as to compensation for improvements and liability for rents and profits, and it is materially modified by the later cases of *Saco Water Power Co.* v. *Goldthwaite*, 35 Maine, 456, *Brackett* v. *Persons Unknown*, 53 Maine, 238, and *Richardson* v. *Watts*, 94 Maine, 476.

The general rule is that a person having title by disseisin cannot be disturbed in his possession except by one who shows a better title. In a case like the present, when upon a full trial of the case it appears that the petitioners have no title, nor any right to possession, it would be a gross injustice to give them a decree for partition, and compel the respondents to have the value of their improvements estimated, and to pay the petitioners their share of the rents and profits. Even under the decisions in Maine relied on by the petitioners, it is plain that all of the respondents but one are entitled to be heard, and to rely upon the petitioners' want of title as a defence, for it is held in those cases that if the possession is continued more than twenty years before the trial, it ripens into a perfect title, even though the petition was brought before the expiration of the

twenty years. This doctrine is plainly applicable to all the respondents but one. As to that one, it is said that the bringing of a writ of entry before the expiration of the twenty years interrupts his possession and defeats his title. This would be true if the writ had been prosecuted to a judgment in favor of the demandants. But when it appears, as it does upon the proof in this case, that the suit cannot be maintained, and that the tenant must ultimately prevail, no such effect can be given to the bringing of a writ of entry. We are of opinion that there was no error in the refusal of this ruling.

2. The deed from the guardian of Jacob Ayer to John Mulliken and others was a very ancient deed, and it was found in the possession of an heir of one of the grantees. Moreover, the various records from the Probate Court tend to show that the possession and claim of title of the parties to it was for a long time in conformity with it. Under such circumstances an ancient deed may be admitted in evidence without formal proof of its execution. *Phillips* v. *Watuppa Reservoir Co.* 184 Mass. 404, and cases there cited. *Stockbridge* v. *West Stockbridge*, 14 Mass. 257. *Green* v. *Chelsea*, 24 Pick. 71.

In the year 1896 this deed was proved before the Probate Court in accordance with the Pub. Sts. c. 120, §§ 7, 8, 13, and was recorded in the registry of deeds. Whether this mode of proof as a preliminary to registration was applicable to a deed executed in 1776 it is unnecessary to decide, as the original was rightly admitted in evidence.

3. It is contended that the instrument was not competent because an unrecorded deed passes no title except as against the grantor and his heirs and devisees and persons having actual notice of it. Pub. Sts. c. 120, § 4. (R. L. c. 127, § 4.) But this deed was not admitted as a deed which should be effectual to deprive a grantee of land actually conveyed to him under a later deed. It was admitted as a material fact bearing upon the construction of the language of description in the deeds to Nathan Ayer under which the petitioners claim. These later deeds did not purport to convey any particular land in Massachusetts. They are merely releases and transfers of the interest of the grantors, if they then had any, in the estate of Jacob Ayer, real and personal. The language of description is, " all

the right we have in any estate real or personal belonging to the estate of Jacob Ayer late of Haverhill aforesaid deceased." These deeds were made in 1810 and 1811, and were not recorded until 1884 and 1889. Under a deed containing such a description, with no designation either general or special of any property, the grantee takes nothing unless it is shown that there is property to which the language applies. The prior deed to Mulliken and others shows that the language of these later deeds does not include the lands in question. *Adams* v. *Cuddy*, 13 Pick. 460. *Jamaica Pond Aqueduct* v. *Chandler*, 9 Allen, 159. *Woodward* v. *Sartwell*, 129 Mass. 210. *Fitzgerald* v. *Libby*, 142 Mass. 235. *Dow* v. *Whitney*, 147 Mass. 1. The doctrine as stated in *Adams* v. *Cuddy*, *ubi supra*, has been explained and limited in some of the later cases above cited, but its application to cases like the present has not been questioned. These deeds were made by some of Jacob Ayer's heirs more than twenty years after his decease. In terms they referred to the estate of a deceased person, and they implied a possibility that the several grantors had some interest in his estate, and they conveyed these interests, if there were any. We think it plain that the property referred to was only that which would pass to his heirs or distributees upon the settlement of his estate, and not that which he had conveyed away, even if the deed of conveyance had not been recorded.

4. The judge rightly refused to consider the evidence heard before the auditor which was returned with his report. The auditor was not directed to report the evidence and it was not his duty to report it. For special reasons, as to present a question of law, it is often the duty of an auditor to report certain evidence; but in a case like the present, it would be an impropriety to make all the evidence a part of the report. After referring to exhibits and plans enumerated in a list, the auditor's report concludes as follows : " The testimony is in four volumes marked H. W. (B) (C) (D) & (E) January 9, 1900. All said exhibits and testimony are hereby referred to for full particulars as to all matters therein contained and shown." It is said that the hearing before the auditor was very long. It is not to be presumed that he made four volumes of testimony a part of his report to be read at the trial without a clear statement to that

effect. The reference to it in the last sentence does not purport to make it a part of the report. We do not understand the reason for the reference. Very likely it was for the satisfaction of the parties, and for the auditor's justification if questions should ever arise as to the correctness of his conclusions. The evidence was not a part of the report.

The findings of the auditor and the facts stated in his report well warranted a finding by the judge that the deed from the guardian to Mulliken and others included all the land described in the petition.

5. The judgment in the first writ of entry does not establish the title of the petitioners to any other land than that described in the writ. As between the parties to it, the judgment is conclusive as to the land demanded in the writ, not only in reference to the matters actually put in issue, but as to all that might have been put in issue. But in reference to collateral rights not included in the action, it is conclusive only as to matters which were in issue and adjudicated. *Foye* v. *Patch*, 132 Mass. 105. *Watts* v. *Watts*, 160 Mass. 464. The title to other lands was not in issue, and could not be included in the judgment. At the trial of the present case no evidence was introduced beyond the record in the real action to show what matters were actually put in issue. In the absence of such evidence it cannot be held that any matters affecting this case were collaterally determined.

The petitioners' exceptions must, therefore, be overruled.

The respondent Tilton excepted to the ruling of the court that the judgment in the first real action was binding upon him in this proceeding, and that the petitioners "are entitled to partition in the lot called City Landing No. Fourteen solely on account of the judgment in said real action."

The only ground on which this ruling can be attacked is that one of the petitioners was not a party to that judgment. The doctrine of estoppel by a former judgment rests upon the mutuality of the relation of the parties to it; but it has often been held that the lack of absolute identity of the parties in the former suit and in the later one does not necessarily deprive the judgment of its conclusiveness between those who were parties to it. *Green* v. *Bogue*, 158 U. S. 478, 503. *Thompson* v.

*Roberts,* 24 How. 233, 241. *Lawrence* v. *Hunt,* 10 Wend. 80. *Davenport* v. *Barnett,* 51 Ind. 329. *Marshall* v. *Pinkham,* 73 Wis. 401.

In the present case the petitioner, Lucy C. Kimball, was not a party to the former judgment, but the other petitioners and the respondent Tilton were the opposing parties. The other petitioners ought not to be precluded from relying upon it because the petitioner Kimball is joined with them in this suit; on the other hand, the petitioner Kimball cannot avail herself of it, for her rights were not involved in the former trial, and neither she nor Tilton could be bound as to her rights. The judge ought to have ruled that the judgment was conclusive against the respondent Tilton in favor of the other petitioners, but that it was not competent in favor of the petitioner Kimball. *Dyett* v. *Hyman,* 129 N. Y. 351, 358. *Whitcomb* v. *Hardy,* 68 Minn. 265. The finding was, therefore, erroneous so far as it pertains to the share of the petitioner Kimball, but was correct in other particulars. For this reason there must be a new trial as to this lot, unless the petitioner Kimball elects to become nonsuit, in which case the entry may be

*Exceptions overruled.*

*H. N. Merrill & B. B. Jones,* for the petitioners.

*H. P. Moulton, R. D. Trask & J. H. Pearl,* for the respondents.