ANDREW B. SUNTER & another *vs.* WILLIAM M. SUNTER.

Suffolk.   December 6, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Deed.   Guardian.   Equity Jurisdiction,* Laches, For an accounting.

A deed of real estate from a mother to a son, one of her three children, recited that it was given in consideration of one dollar and other good and valuable considerations, and contained a clause declaring the conveyance to be upon the condition, that the grantee and his heirs and assigns and all future owners of the estate should support the grantor for and during the term of her natural life. It was found that the conveyance was made by the mother to her son out of gratitude for his kindness to and care of her in the past and his promise to care for her in the future, and that the son, although willing to do so, did not in fact support his mother at any time from the giving of the deed until her death. *Held,* that the deed was a voluntary conveyance and that the son had no better title than his mother.

If a guardian, who has obtained a license from the Probate Court to sell real estate of his infant ward for the maintenance of the ward, conveys the real estate through a third person to himself for his own benefit, the ward on coming of age may avoid the conveyance.

There can be no laches where a plaintiff exercising reasonable diligence has remained for many years in ignorance of the facts which give him a right to relief in equity and on learning the facts files his bill.

In 1887 a widow, who had been appointed the guardian of her three minor children, conveyed to herself through a third person certain land belonging to her wards without paying anything for their benefit. She then built a house on the land which she used for her own benefit. The three children came of age respectively in 1889, 1893 and 1896. In December, 1903, she made a voluntary conveyance of the real estate to one of the three children, having given him possession of the property in November of the previous year, and in February, 1904, died. Two months after her death her other two children.

brought a suit in equity to set aside the conveyance of their mother indirectly to herself in 1887, and for an accounting. It appeared that the plaintiffs knew nothing of what their mother had done in regard to the real estate until after her death. *Held,* that there was no laches on the part of the plaintiffs.

Since the enactment of St. 1807, c. 75, now embodied in R. L. c. 179, § 17, one who individually or by those under whom he claims has actually held and possessed land for six years before the date of a writ of entry on which a judgment for the land has been obtained against him is entitled to compensation for the value of any buildings or improvements made or erected on the land by him or by any person under whom he claims, and the statute gives him the same right where a title is established against him in a suit in equity instead of by a writ of entry.

In a suit in equity to set aside a conveyance of real estate made by the mother of the plaintiffs as the guardian of the plaintiffs and their brother, the defendant, through a third person to herself for her own benefit, and for an accounting by the defendant to whom the mother made a voluntary conveyance of the real estate two months before her death, having given him possession of the property a year earlier, it appeared that the conveyance, which was voidable by the plaintiffs, was made in 1887, by the mother of the parties, who treated the property as if it was her own, that the property then was unimproved land said to be worth $2,000, and that the mother, having acquired the legal title, built a house upon it at a cost of $3,885, and that she and afterwards the defendant paid the taxes on the property and for repairs and insurance. *Held,* that, on the defendant conveying to each of the plaintiffs one undivided third part of the property, and on an accounting by the defendant for the rents and profits of the plaintiffs' shares of the property after the defendant obtained possession, the plaintiffs must contribute their proportionate part of the enhanced value of the common property due to the improvements made upon it by their mother, setting off against this their shares in the rents and profits during their mother's occupation after deducting the sums expended by her for taxes, repairs and insurance, but being allowed nothing in excess of the sum charged to them for improvements.

BILL IN EQUITY, filed April 25, 1904, by Andrew B. Sunter and Jennie B. Bolton, children of Andrew B. Sunter and Jane Sunter, against their brother William M. Sunter, praying that the defendant be ordered to convey to each of the plaintiffs an undivided third part of a certain parcel of real estate on Cottage Street in that part of Boston called Dorchester conveyed to the defendant by Jane Sunter, the mother of the plaintiffs and the defendant, who died on February 24, 1904, and for an accounting for all the rents and profits received from the real estate in question by Jane Sunter and the defendant.

In the Superior Court the case was referred to a master. Later the case was heard by *Sheldon,* J. upon the defendant's exceptions to the master's report. The report stated the following facts in regard to which there was no dispute:

Andrew B. Sunter, the father, died intestate on June 24, 1886, seised of the land in controversy. He left a widow, Jane Sunter, and three children, the parties to this suit. At the time of his death all the children were minors and their mother was appointed their guardian by the Probate Court for Suffolk County.

Andrew B. Sunter came of age on July 9, 1893, Jennie B. Bolton on December 3, 1889, and William M. Sunter on August 25, 1896.

On June 6, 1887, by a decree of the Probate Court the guardian was licensed to sell the real estate in question for the maintenance of her wards and to invest the balance, if any, not needed for such maintenance, and gave bond therefor in the sum of $2,000 as required by the decree.

On September 2, 1887, Jane Sunter as guardian, by virtue of the license conveyed the land to one William L. Rutan, who immediately and on the same day reconveyed it back to her as an individual. In the deed from Jane Sunter to Rutan the consideration was expressed to be $2,000.

On December 24, 1903, Jane Sunter conveyed the land by a quitclaim deed to the defendant.

Jane Sunter died intestate on February 24, 1904, and no administration was taken out on her estate.

It appeared also that Andrew B. Sunter, the father, besides the land above mentioned and a small amount of money, about $200, left two policies of insurance on his life in the Vermont Life Insurance Company aggregating $5,000 payable to his wife, and that the company paid this amount to Jane Sunter on November 4, 1886; that Rutan acted as business manager for Mrs. Sunter after her husband's death; that he advised her to make the conveyance so that she would have a clear title to the land and then to erect a house upon it and thereby have a safe investment for her money; that acting on Rutan's advice she made the conveyance to herself through Rutan and subsequently built the house at a cost of $3,885; that Rutan did not pay $2,000 or any part of it, and that he was merely a conduit for the title to pass through; that after obtaining the title of the land and building the house, Jane Sunter lived in it at various periods of time; that all of the children went to work before

they attained their majorities, and each contributed money to their mother out of their wages until they were married, and the two sons continued to do so after they were married.

The master found upon the evidence submitted to him that Jane Sunter did not sell this property for the maintenance of her wards, but on the contrary used it for her own benefit; that she never paid over to the wards any money as the proceeds of the land and that she never accounted with them or the Probate Court for the proceeds; and ruled that the transaction whereby she got the title thereto was improper and was voidable at the election of the plaintiffs.

He further found that the defendant gave no valuable consideration for the conveyance to him; that while he testified that he contributed money to his mother in accordance with his means, and lent her money to pay the taxes at one time, and himself paid the taxes for several years, none of these payments or loans were made as a consideration for the transfer to him. The master found from the defendant's own testimony that Jane Sunter conveyed the real estate to him out of mere gratitude for his kindness to and care of her in the past and his promise to care for her in the future. He found that Mrs. Sunter seemed to have acted with this property as if it were her own and did not appear to have realized at all that she was a trustee of the land for all of her children.

The deed to the defendant, which was under seal and recited a consideration of one dollar and other good and valuable considerations, contained the following clause: " but this conveyance is upon the condition, that the grantee, his heirs and assigns and all future owners of this estate, shall support the grantor for and during the term of her natural life." Mrs. Sunter was living with a friend at the time the deed was given, and she continued to live with this friend until her death. The defendant, though testifying that he was willing to support her, in fact did not support his mother from the date of the deed to her death. The master ruled that this clause in the deed did not constitute a valuable consideration so far as this suit was concerned, and found as a fact that the conveyance was voluntary, and that the defendant was not a purchaser for value nor without notice of the plaintiffs' equities in the land. He ruled

that the deed to the defendant was voidable at the election of the plaintiffs.

The defendant contended that the plaintiffs after coming of age and with knowledge of the condition of the title of the property acquiesced therein and were estopped from maintaining this suit. The master found that no evidence was produced before him from which he could find any such acquiescence, and that on the contrary it appeared that the plaintiffs did not know until after their mother's death what she had done, and as the bill was filed about one month * after she died, there was no laches by the plaintiffs.

The master found that, although the deed to the defendant was not given until December 24, 1903, Jane Sunter promised to convey the property to him in October, 1902; that he moved into and occupied it in November, 1902, and had resided there ever since; that the rental value of the property was $42 per month, and that the defendant should be charged with two thirds of such rental value at that rate from November 1, 1902, until the date of the hearing, June 21, 1904, amounting to $560. The defendant excepted to the admission of evidence as to the rental value.

The master found that the defendant paid the taxes and insurance and made various repairs and improvements upon the property.

Attached to the report was a statement of the account as found by the master which showed that the defendant was indebted to the plaintiffs in the sum of $233.98.

The master ruled that, as Jane Sunter was dead and her estate was not a party to this suit, any payments made by her for the benefit of the property and all rent received by her should not enter into the accounting between these parties, and he accordingly excluded them.

He found that the plaintiffs Andrew B. Sunter and Jennie B. Bolton each were entitled to a conveyance of one undivided third part of the premises in controversy, and further were entitled to a judgment for the sum of $233.98.

* It was about two months, namely from February 24, 1904, to April 25, 1904. See p. 450.

The judge made the following final decree:

1. That the defendant's exceptions to the master's report are overruled, and the master's report is confirmed;

2. That the defendant at his expense and by a deed subject to the approval of the court forthwith convey to the plaintiffs, Andrew B. Sunter and Jennie B. Bolton, each one undivided third part of the premises described in the plaintiffs' bill;

3. That the defendant pay to the plaintiffs the sum of $233.98 with interest thereon from the date of the. filing of the bill;

4. That the plaintiffs recover their costs in the sum of $25.15 of the defendant, and have execution for such damages and costs.

The defendant appealed.

*M. J. Jordan,* (*J. D. Graham,* with him,) for the defendant.

*B. S. Ladd,* (*T. F. Strange* with him,) for the plaintiffs.

BRALEY, J. Unless the defendant is a purchaser for value, and without notice of the infirmity of his mother's title, as against the plaintiffs he holds by no better right the land described in the bill. *Wyman* v. *Hooper,* 2 Gray, 141, 145. In equity the consideration must be valuable as distinguished from that which is merely moral or equitable, or imported from the nature of a sealed instrument, though it need not be pecuniary, or equal to the value of the property conveyed. *Bullock* v. *Sadlier,* Ambl. 764. *Patten* v. *Moore,* 32 N. H. 382. *Wood* v. *Robinson,* 22 N. Y. 564, 567. *Price* v. *Jenkins,* 5 Ch. D. 619. *Dean* v. *Anderson,* 7 Stew. (N. J.) 496, 508.

But if the defendant is found by the master to have neither paid money, nor parted with other property for her conveyance to him, he relies on a clause in the deed by which he agreed to support her during the remainder of her life.

This defence is devoid of merit, for it is shown in the report by the defendant's own testimony, that the conveyance was made out of gratitude for his care and kindness to her in the past, as well as upon his promise to care for her in the future, and during the few months elapsing between the date of the deed and that of her death she was not in fact supported by him though he expressed his willingness to have done so if required.

Upon these findings the master's final ruling that as between

the parties the agreement to furnish her with maintenance could not be considered a valuable consideration, and that the conveyance being purely voluntary let in the plaintiffs to their equitable rights in the land, if they chose to assert them, was well warranted and must be sustained. *Dow* v. *Jewell,* 18 N. H. 340. *Padgett* v. *Lawrence,* 10 Paige, 170. The case is thus left to be considered as if the title had remained in her when as the probate guardian of the parties she personally acquired the estate through an intermediary at a sale made by herself acting in a fiduciary capacity.

While it is significant that the master finds although she was duly licensed to sell the property for the maintenance of her wards, in reality she sold and obtained title for her own benefit, yet if the purchase by her had been for a fair price, or to prevent a sacrifice of the land, the transaction equally would have been voidable by them. *Walker* v. *Walker,* 101 Mass. 169, 172. *Goodell* v. *Goodell,* 173 Mass. 140, 146. *Hayes* v. *Hall,* 188 Mass. 510.

A sale by herself officially to herself individually was not absolutely void, for if the wards upon coming of age, and with knowledge of the transaction had been content to let the conveyance remain unimpeached the title would have remained absolutely in her. *Jones* v. *Dexter,* 130 Mass. 380, 383. *Morse* v. *Hill,* 136 Mass. 60. But as the plaintiffs have elected to avoid, the defendant claims that the delay of which they have been guilty since attaining their majority shows their acquiescence, and the bill cannot be maintained. Until of age acquiescence could not be imputed, nor could they be affected by the uncommunicated knowledge of their mother and guardian that she had appropriated the property. *Denholm* v. *McKay,* 148 Mass. 434, 441, 442.

If a cause of action accrued entitling them to have the transfer set aside when she unlawfully acquired title, the plaintiffs were under the disability of infancy, and could not assert their right. Under Pub. Sts. c. 196, § 5, now R. L. c. 202, § 24, they had a period of ten years after reaching their majority in which to do so, but this time expired without any action being taken by them, because after attaining full age, and until their mother's death, the plaintiffs are found to have been ignorant of her

conduct, though almost immediately upon such discovery they brought this bill. If in equity, or at law, the statute of limitations began to run when they ascertained the fraud that had been practised upon them, they are not thereby barred, and if in equity independently of the statute a delay had ensued which might have made the claim stale, and hence unenforceable, they are found to have exercised reasonable diligence. *Farnam* v. *Brooks*, 9 Pick. 212, 245. *Evans* v. *Bacon*, 99 Mass. 213, 215. *Sawyer* v. *Cook*, 188 Mass. 163. *Prevost* v. *Gratz*, 6 Wheat, 481. *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 592.

When their mother took possession the land was unimproved, and at her own expense she built thereon a dwelling house, the cost of which the defendant now claims should be allowed to him as an improvement, but the master in stating the account declined to allow the benefit of this expenditure, and the exception of the defendant to this ruling raises the most important and difficult question in the case.

At common law compensation was not awarded for improvements to the freehold even when made in good faith by one in possession claiming ownership, but who ultimately was found to have no title as against the true owner. *Russell* v. *Blake*, 2 Pick. 505, 507. *Marshall* v. *Crehore*, 13 Met. 462, 468.

But this doctrine, in many cases harsh and inequitable, was ameliorated by the St. of 1807, c. 75, now embodied in R. L. c. 179, § 17, and since this enactment where the land demanded has actually been held and possessed by the tenant, or his predecessor for six years, he becomes entitled to betterments whether annexed by himself or by a former occupant, or if this period of time has not passed, and where the improvements have been made in good faith by himself, or those who previously have occupied, then he may recover compensation therefor whether the title is put in issue by a writ of entry, or by petition for partition. Rev. Sts. c. 101, § 20. St. 1850, c. 278. R. L. c. 184, § 19; c. 179, § 18. *Bacon* v. *Callender*, 6 Mass. 303. *Marshall* v. *Crehore*, 13 Met. 462. *Plimpton* v. *Plimpton*, 12 Cush. 458, 467. *Butrick, petitioner*, 185 Mass. 107, 109.

If the plaintiffs had resorted to a writ of entry the defendant would have been entitled to the benefit of these provisions, but if instead they seek relief in equity the form of remedy does not

change the right, as the protection which the statute affords is the same. *McSorley* v. *Larissa*, 100 Mass. 270, 272. *Billings* v. *Mann*, 156 Mass. 203.

Except for the limitation of time the statute is declaratory only of the general maxim that those seeking equity must do equity. Story Eq. Jur. § 799 a, b, note 1. *Williams* v. *Gibbes*, 20 How. 535.

The provision, that if it appears possession has been held by a title which the tenant had reason to believe good he then becomes entitled to compensation, is not applicable to the present case as the guardian must be presumed to have known that she was acquiring the estate of her wards, but where it appears that the betterment has been annexed either by the tenant, or those under whom he claims, and that either has actually held the land adversely to the true owner for six years previous to the bringing of the suit in which the ownership is put in issue the value of permanent improvements may be assessed. R. L. c. 179, § 17. *Baggot* v. *Fleming*, 10 Cush. 451. *Plimpton* v. *Plimpton*, 12 Cush. 458. *Wales* v. *Coffin*, 100 Mass. 177.

The conveyance of the guardian indirectly to herself was not an absolute nullity for it passed an estate to which she had the legal seisin, and if she had conveyed to an innocent purchaser for value he would have acquired an indefeasible grant as against the plaintiffs. *Somes* v. *Brewer*, 2 Pick. 184, 191. *Robbins* v. *Bates*, 4 Cush. 104.

If at their election, however, it was defeasible as to her, yet as she occupied under it for more than six years she held by a tenure that although it has now failed was altogether in her own right, and being adverse supports the defendant's claim for betterments. *Bacon* v. *Callender*, 6 Mass. 303. *Heath* v. *Wells*, 5 Pick. 140. See *Davy* v. *Durrant*, 1 DeG. & J. 535.

The implied or constructive trust which it is sought by the bill to have declared having been found to be established as of the date of the deed to herself, though by reason of the disability of infancy, and after that was removed, because of ignorance of the transaction, the filing of the bill was delayed, is the date to be taken as fixing the time when the plaintiffs' right accrued. If this is done the defendant will then receive in the right of his mother the full benefit of the betterments, while they will lose

a corresponding right to an account of rents and profits, which she would have been obliged to have rendered, but this would be inequitable, for where those entitled to property held in trust are obliged to come into equity to recover their estate, it is generally held that they have a right to further relief by way of an accounting during the time it has been wrongfully withheld. *Teasdale* v. *Sanderson,* 33 Beav. 534. *Pickering* v. *Pickering,* 63 N. H. 468. *Hack* v. *Norris,* 46 Mich. 587. *Scruggs* v. *Memphis & Charleston Railroad,* 108 U. S. 368. *Mayer* v. *Murray,* 8 Ch. D. 424. *Strong* v. *Blanchard,* 4 Allen, 538. *Long* v. *Richards,* 170 Mass. 120.

Because of reasons previously stated, as the defendant succeeded to a voidable title, and as his claim for compensation arises by way of subrogation, which rests solely upon her expenditure, of which the plaintiffs must pay to him their proportionate part so far as it has permanently enhanced the value of the common property, upon equitable principles they are entitled also to set off their share in the rents and profits during the period of their mother's occupation after deducting therefrom their contributory part of the sum expended by her for taxes, repairs and insurance. But the amount of their counterclaim is not to be allowed in excess of the sum with which they are charged for improvements. R. L. c. 179, §§ 23, 24. *Raymond* v. *Andrews,* 6 Cush. 265, 269. *McMahan* v. *Bowe,* 114 Mass. 140, 148. *Stark* v. *Coffin,* 105 Mass. 328, 331, 332. *Backus* v. *Chapman,* 111 Mass. 386. *Brown* v. *South Boston Savings Bank,* 148 Mass. 300. *Canal Bank* v. *Hudson,* 111 U. S. 66, 83.

Upon restating the account accordingly, the error which was made in charging the defendant with rent before he became vested with the paper title is rendered immaterial.

Another exception relates to the admission in evidence of the rental value of the premises during the entire period elapsing between the time the house was built and that of filing the bill, but the admission of this testimony for the purpose of ascertaining the amount of rent with which the defendant should be charged after he obtained title was within the master's discretion, and it was for him to determine whether this evidence was so remote in point of time as to be of no value. *Peabody* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 489, 492,

Nor is the remaining exception, that upon the avoidance of the guardian's sale the widow's right to dower in the land was restored, so that the defendant should not be held for rent during her life, well taken, for by reason of her death before this suit was instituted this claim not only was extinguished, but never having been assigned, even if revived upon the conveyance to herself being declared invalid, no estate in dower passed to the defendant. *Croade* v. *Ingraham*, 13 Pick. 33, 35. *Brock* v. *Rogers*, 184 Mass. 545. *Walker* v. *Walker*, 101 Mass. 169, 172.

We have thus considered all the exceptions argued, treating the others as waived, and because of the refusal of the master to charge the plaintiffs with their share of the increased value of the property due to the improvements, less their part of the net rents and profits, the exceptions relating to this question, as well as the exception concerning the defendant's accountability before he became seised must be sustained, and the report recommitted for the purpose of having this part of the account corrected and restated, but in all other respects the defendant's exceptions are overruled and the report confirmed.

*Decree accordingly.*