SARAH P. LIVINGSTONE *vs.* JAMES H. MURPHY & others.

Berkshire.    September 20, 1904. — January 10, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Husband and Wife. Equity Jurisdiction,* To reform instrument on account of mistake of fact. *Laches. Frauds, Statute of. Trust,* Resulting. *Mortgage,* Of real estate. *Estoppel. Deed.*

A deed from a deputy sheriff to a wife made in pursuance of a sale on an execution against her husband is void.

A mistake as to the ownership of land is a mistake of fact in regard to which equity will grant relief, although the mistake arose from an erroneous view of the legal effect of a deed.

If the defence of the statute of frauds is not pleaded and is not relied upon at the trial it is waived.

In a suit in equity to reform an instrument in writing which owing to a mistake of fact fails to express the alleged intention of the parties, the plaintiff is not chargeable with laches on account of a lapse of time after the execution of the instrument if he files his bill within a reasonable time after becoming aware of the mistake.

Where a husband and wife to secure their joint note agree to give a mortgage covering the entire interest of both of them in a certain lot of land, but by a mistake of fact the land is believed by all the parties to belong to the wife, whereas it belongs to the husband, and a mortgage accordingly is executed by the wife

the husband joining only to release his right of curtesy, the mortgage incorrectly describing the note as that of the wife alone, the mortgagee can maintain a bill in equity against the husband and wife to compel them to execute a new mortgage conveying the entire title of each of them, and such new mortgage will be good against all parties who took after the imperfect mortgage was given with notice of its infirmity. In such a case the record of the mortgage given by the wife with the release of curtesy by the husband gives no notice of the agreement of the husband which is an essential part of the equitable claim of the mortgagee.

No notice is given of a resulting trust by a recital in a deed by a deputy sheriff to a wife in pursuance of a sale on an execution against her husband, that the consideration named in the deed was paid by the wife, as such a deed passes no legal title to which the equitable right can attach.

The exception from the covenants of a mortgage of a prior mortgage does not estop the mortgagee from contesting the validity of the prior mortgage as against the holder of it.

Under R. L. c. 127, § 2, a quitclaim deed in the ordinary form to a purchaser for a valuable consideration without notice conveys a title free from equities, and the burden of proving notice is on one alleging it.

HAMMOND, J. This is a bill to reform a mortgage deed. While its allegations, especially with reference to the existence and nature of the agreement under which the mortgage was given, are somewhat defective and might perhaps be held insufficient as against a special demurrer, still, in the absence of such a demurrer, the bill may be construed as setting out in substance that there was an agreement between the plaintiff on the one hand, and the mortgagor, Margaret J. Murphy, and her husband, James H. Murphy, on the other, that the mortgage should cover the entire interest both of the husband and wife in all of the land therein described; that by reason of a mutual mistake as to the ownership of the northerly part of the land, the title to which part was in the husband and not in the wife, the mortgage does not in fact cover that part and therefore it is not in accordance with the agreement. The prayer of the bill is in substance that the mortgage be reformed and that to that end James H. Murphy be ordered to execute and deliver to the plaintiff a mortgage conveying his right in all the land, to take effect as of the time of the date of the plaintiff's mortgage.

The bill with its amendments sets out the names of various parties who, since the mortgage to the plaintiff, have, either as attaching creditors, mortgagees or grantees, become interested in the land, and they are all made defendants. At the trial, how-

ever, the only defendants represented were the two Murphys and Wood, who was the holder of a prior mortgage discharged when a mortgage to the plaintiff was made, and also holder of a mortgage subsequent to that of the plaintiff. The bill has since been taken for confessed against all the others.

The defendant James H. Murphy urges that, even if there was a contract, he was not a party to it. It appears however that, although the mortgage describes the mortgage note as " signed by the said Margaret J. Murphy," it was in fact signed by her and her husband jointly, and hence his liability on the debt was the same as that of his wife. It further appears that it was the understanding of all parties that the mortgage should cover his interest in the whole land and that in pursuance thereof he signed it to release his right of curtesy which was supposed at that time to be all the interest he had. The judge further finds that he then was ready and willing and by implication agreed to do whatever might be necessary to give a valid first mortgage upon the whole land. Under these circumstances he must be regarded as a party to the contract, so far at least as concerns his interest in the land.

The mistake was as to the title to the northerly lot. All supposed that the wife owned it, whereas it was in fact owned by the husband. She had received in 1893 a deed of it from a deputy sheriff made in pursuance of an execution sale against her husband. This deed was supposed by all parties to be valid and to work a change in the title from James to Margaret, but it was in fact of no legal effect whatever. *Stetson* v. *O'Sullivan*, 8 Allen, 321. The mistake was mutual, and it was one of fact, namely, as to the ownership of the northerly lot. " Private right of ownership is a matter of fact; it may be the result also of matter of law; but if parties contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is, that that agreement is liable to be set aside as having proceeded upon a common mistake." Lord Westbury, in *Cooper* v. *Phibbs*, L. R. 2 H. L. 149, 170. And this is so, although the mistake arises from an erroneous view of the legal effect of a deed in the chain of title. Against such a mistake equity will relieve. *Cooper* v. *Phibbs, ubi supra. Baker* v. *Massey*, 50 Iowa, 399. *Griffith* v. *Townley*, 69 Mo. 13. Pom. Eq.

Jur. § 849, and cases cited. See also *Canedy* v. *Marcy*, 13 Gray, 373, 377.

The defendant Wood contends that the agreement was within the statute of frauds. But the statute was not pleaded, nor does it appear to have been relied upon at the trial. Under the familiar rule, that ground of defence must therefore be regarded as having been waived. Nor do we think that the plaintiff is chargeable with laches. She seems to have moved within a reasonable time after she became aware of the mistake. *Canedy* v. *Marcy, ubi supra.*

The judge of the Superior Court therefore rightly ruled upon the facts found that as against the mortgagor and her husband " the plaintiff immediately upon the execution of the mortgage to her had an equity to compel them to execute a new mortgage which should be a first lien upon the northerly and southerly lots." And this equity would prevail against all parties who subsequently took with notice.

The main question is whether there was enough upon the record to give to attaching creditors and purchasers notice of this equitable right of the plaintiff, or at least to put them on their inquiry. It will be observed that this was a right to have the defendant James H. Murphy convey to her the title which at the time of her mortgage he had in the northerly lot. To sustain this right it is not enough to show the mutual mistake as to ownership of the lot. It must further appear that there was an agreement on the part of James to convey his interest in it. Strictly speaking, the bill requests not a reformation of the terms of the mortgage actually given, but that a new person shall be made a grantor. It seeks to compel James to execute a new mortgage, and it cannot be maintained against him unless he originally agreed in substance to convey his interest. In a word, the two essential facts upon which the equitable right of the plaintiff rests are first, the mutual mistake, and second, the agreement of James to convey all his interest in the land.

With this view of the plaintiff's case we proceed to examine the records. Margaret's title to the northerly lot rests upon the deed of deputy sheriff Wood, (not the defendant Wood,) to her, dated November 7, 1893. The deed recites that the consideration, $745, was paid by her, and it purports to convey to

her the interest of her husband James in 'the northerly lot. The next conveyance is the mortgage given by Margaret to the defendant Wood on February 22, 1894. She is the sole grantor named at the beginning of the mortgage, but after the condition the husband substantially joins therein; and there is a statement at the end of the description that the land is the same conveyed to Margaret by the above mentioned deed of the deputy sheriff. Of this mortgage and its recitals the defendant Wood of course had actual notice, because he was the mortgagee, but inasmuch as it had been discharged and no one claims under it the record is not constructive notice to the other defendants of the recitals therein contained. Next comes the plaintiff's mortgage. Margaret is the sole grantor, while James just before the *in testimonium* clause releases all right of curtesy. Although, as above stated, the mortgage note was actually signed both by Margaret and James, still that fact does not appear in the mortgage. On the contrary the note is therein described as signed by " the said Margaret J. Murphy." Up to this time the record only shows at the most that Margaret received from the deputy sheriff a deed of the lot in question, for which she seems to have paid a valuable consideration; that from that time to the time of the plaintiff's mortgage both Margaret and James acted as if the title to that lot was in Margaret, and that the plaintiff, in taking her mortgage, seems to have acted upon the same view. But that is not enough to put attaching creditors and subsequent purchasers upon their inquiry. This is not the case where the record by fair implication refers to an unrecorded deed, as in cases like *George* v. *Kent,* 7 Allen, 16, nor where one of the parties is declared to be acting in a representative capacity, as in cases like *Hayward* v. *Cain,* 110 Mass. 273. The plaintiff's mortgage proceeded upon the theory that Margaret owned the lot in her own right. So far as shown by the record, the loan was made to and the note was signed by Margaret alone. The most natural inference would be that the only parties to the contract for the loan were Margaret and the plaintiff, and that the plaintiff was content to rely upon Margaret's title for security; that, neither as a party to the contract nor as the owner of the fee, was James concerned in the transaction, and that the only thing he was expected to do was to release curtesy. There is nothing

on record to show that he acted even as the agent of Margaret, or that he was in any way concerned in the transaction except to do what he did, namely, release his curtesy. It is going too far to say that the simple fact that a husband releases his curtesy in the land described in a mortgage by his wife purporting to convey the land as hers is notice that he has agreed to convey his own interest in the fee if it should turn out that he and not she is the owner. No notice, therefore, of the essential facts was given by the record, nor was there enough to put a person on inquiry.

It is urged by the plaintiff that the recital in the deed from the deputy sheriff to Margaret that the consideration was paid by her gives notice of a resulting trust within the doctrine recognized in *Hayward* v. *Cain, ubi supra.* But that doctrine is applicable only where the legal title is conveyed by the deed. The equitable title is attached to such legal title, and where the deed is void of course the doctrine is not applicable. Margaret simply paid a claim of one of her husband's creditors, but that did not give her a resulting trust in the land.

Nor is there anything in either of the two subsequent mortgages to the defendant Wood to show that the plaintiff's mortgage was not exactly what she was entitled to have under her contract. While it is true that the plaintiff's mortgage is excepted from the covenants contained in each of these two mortgages, still there is no agreement on the part of Wood to assume it, and there is nothing to estop him from contesting its validity as against the holder of it. *Weed Sewing Machine Co.* v. *Emerson,* 115 Mass. 554.

We do not understand that the plaintiff now contends that the instrument of release executed by the defendant Wood of the date of June 16, 1898, had any other legal effect than simply to discharge the mortgage given to him as above stated on February 22, 1894.

It follows from what has been said that the plaintiff's equity cannot prevail except as against persons who took their title with notice other than that contained in the record. Applying this principle to the facts, it is clear that it cannot prevail as against the two mortgages held by Wood. Nor can it prevail over the execution sale to the Third National Bank, since it is

not proved that either the attaching creditor, White, or the bank had notice. Although Wood had notice when he purchased from the bank, still he took the title the bank had. As to all the other defendants who have not seen fit to contest except Renfrew, we think that the plaintiff's equity should prevail. So far as respects the deed to Renfrew, we have had some difficulty as to the true effect of the report. The deed seems to have been given after "it was whispered in Pittsfield that there was a flaw in the plaintiff's title." No copy of it is before us. It was given by James H. Murphy, but it does not appear whether there was any release of dower by his wife. It was a quitclaim deed. No finding is made as to whether Renfrew had notice of the plaintiff's equitable right.

A deed under seal, however, imports a consideration, and a quitclaim deed in the ordinary form would have been sufficient to convey the title to Renfrew free from the equitable right of the plaintiff if he was a purchaser for valuable consideration without notice, (R. L. c. 127, § 2,) and the burden of proving notice is upon the plaintiff. Although the defendant Wood had notice when he bought from Renfrew, still, as in the case of his purchase from the bank, he would take the title his grantor had. The bill was not taken *pro confesso* against Renfrew until long after the deed from him to Wood, and in any event Wood's rights are not affected by this order.

After the original hearing, and after the judge had filed a memorandum of his findings, the plaintiff moved to amend the bill by adding the following : " In the event of the court finding that the plaintiff is not entitled to have her said mortgage reformed as against the owners of the said Wood mortgages and of the title under the said execution sale, the plaintiff offers to pay such amount as is found due for redemption. And the plaintiff prays that in such case the court will determine the amount due for redemption from said mortgages and said execution sale and that the plaintiff be allowed to redeem by paying such amount." The proposed amendment was opposed by Wood and was disallowed by the judge upon the ground that under the facts found by the court the " plaintiff has no right of redemption which extends or applies to the northerly lot." The judge then ordered that the bill be dismissed, and by consent of par-

ties reported the case for determination by this court upon certain reservations, the first of which was that "if upon the . . . facts" reported by the judge "the order dismissing the bill was right, and if upon those facts the plaintiff is not entitled to redeem, the order is to be affirmed, and a decree prepared and, entered dismissing the bill."

In view of the state of the record with reference to the Renfrew deed, we think that the order dismissing the bill was right, because all the title of James H. Murphy in the property seems to have passed to Renfrew free from the plaintiff's equitable right, and hence a conveyance from James to the plaintiff would be of no avail.   And for the same reason she is not entitled to a decree allowing her to redeem.

But it may be remarked that there was no need of the proposed amendment.   All the parties were before the court, and their rights, both as to priority of title and of redemption, could have been settled by the decree upon the bill as it now stands. The fact that more than a year has expired since the execution sale is of no consequence since the bill was brought within the year.

The result is that upon the report as it stands the bill should be dismissed.   But inasmuch as there is quite a large interest in the property to which but for the deed to Renfrew the equitable right of the plaintiff would attach, and there has been no actual finding as to whether he did have notice in fact or was a purchaser for value, we are disposed, in view of the manifest equity of the plaintiff's case, to allow the plaintiff to make an application to the trial court to have the case reopened and the report amended so as to contain a finding upon those points. Unless such an application be made and allowed within sixty days the bill is to be dismissed.   If the report be so amended then there is to be a further hearing, if necessary, upon the report as amended, such hearing to be only upon the question of the effect of the deed to Renfrew upon the rights of the plaintiff.

*So ordered.*

*H. L. Dawes, Jr. & C. E. Burke*, for the plaintiff.
*P. J. Moore*, for the defendants Murphy.
*W. Turtle*, for the defendant Wood.