### LUCILE A. McMULLEN vs. HARRY G. PORCH.

Barnstable.   January 2, 1934. — May 25, 1934.

Present: Rugg, C.J., Crosby, Pierce, & Field, JJ.

*Adverse Possession,* Interruption by filing petition for registration. *Evidence,* Lost grant. *Deed,* Construction. *Estoppel. Notice. Bona Fide Purchaser. Land Court.*

Adverse possession of the locus described in a petition in the Land Court for registration of the title thereto is not effective to bar the petition if it had not continued for twenty years previous to the date of the filing of the petition.

The evident purpose of the legislation respecting the Land Court act is to provide a method of making titles to land certain and indefeasible, and that purpose can be best served by making its decrees relate back to the date of the petitions, as prevails in nearly all forms of action. Per Crosby, J.

One Thomas H., the owner of a tract of wild land, died in 1871 and by his will devised it in equal shares to his seven children, one of whom bore the same name as the father. In 1876, six of the seven children, including Thomas, as part of a partition *in pais* by a deed which Thomas signed merely as Thomas H., conveyed to the seventh child the west portion of the tract, describing it as bounded on the east by "land of Thomas," and the grantee therein later made to Thomas a conveyance of the west part of the tract containing the same reference. There was no recorded deed of the east portion of the tract to Thomas. Thomas in 1895 purported to convey the entire tract to the predecessor in title of one who in 1925 sought registration of the title in the Land Court. A respondent, without having had actual notice of any conveyance to Thomas, in 1927 and 1928 procured deeds from the heirs of two of the seven children of the elder Thomas of their interest in the east portion of the tract. The judge of the Land Court found in the recorded deed from the six children to the seventh evidence of a lost grant of the east portion of the tract to the younger Thomas, which worked an estoppel against both the grantors and the grantee therein from making a valid claim of ownership to the east portion of the locus, and decided that the petitioner was entitled to registration. Upon appeal by the respondent, it was *held,* that

(1) Although the recorded deed above described might be evidence of a lost grant and work an estoppel against both the grantors and the grantee therein from the making of a valid claim of ownership in the land, a *bona fide* purchaser without notice was not so estopped;

(2) The respondent was not charged with constructive notice by reason of the recorded deed above described;

(3) By G. L. c. 185, § 36, the respondent was permitted to set up a title acquired by deed after the petition was filed;

(4) The order for a decree in the Land Court should be modified so as to include only the west part of the locus, and to declare that the petitioner's title to the east part of the locus was an undivided five sevenths only, with title to the remaining two sevenths in the respondent.

PETITION, filed in the Land Court by George G. Wheeler on July 13, 1925, and afterwards amended, as described in the opinion.

The petition was heard by *Smith*, J. Among other evidence and material facts found by him and described in the opinion were the following: "I find there is evidence tending to show that this deed to Francis was one of seven deeds between the children intended to effect a partition *in pais* among them. It will be noticed that the east boundary is'by land of Thomas Howes '56 2/11th rods to the Sea,' but there is no deed of record to Thomas from the other heirs of the east part of the old nine rod strip aforesaid, which would include the east part of locus. I find and rule, however, that the description, taken as whole, is evidence of a lost grant and works an estoppel against both the grantors and grantee from making a valid claim of ownership in the land so described as — land of Thomas Howes. As a matter of ancient history it was claimed that this deed described the west half, south end, of an old Croakkey Neck lot. . . . It is not without some merit to assert that the language of the deed does not explicitly state which 'Thomas' is meant, that 'Thomas Howes' speaking in one sense might mean the father and not the son, and on that theory there was no estoppel in favor of the son; but the son signed the deed as 'Thomas Howes' and at its date there was no junior of that name strictly speaking."

The judge ordered title registered in the petitioner subject to a public way and to certain mortgages not here material. The respondent appealed.

*C. C. Paine*, for the respondent.

*J. H. Paine & H. A. Harding*, for the petitioner, submitted a brief.

CROSBY, J. This is a petition to the Land Court dated

June 27, 1925, seeking to register and confirm title to certain land in the town of Dennis under the provisions of G. L. (Ter. Ed.) c. 185. Citation thereon was issued November 9, 1926. Notice by registered mail to the respondent Porch was received November 16, 1926, and notice was posted on the land November 19, 1926. On motion of Lucile A. McMullen, to whom the petitioner had conveyed the locus by deed since the filing of the petition, she was substituted as the person in whose name the land should be registered. The respondent, Harry G. Porch, by answer filed December 18, 1926, claims title to the land under a certain deed, and says that he has had adverse possession for more than twenty years.

The case was heard in the Land Court on May 24, 1933. The judge found the following facts: The locus is wild land which has never been improved or built upon. In 1822 Thomas Howes, senior, acquired title to all the land in controversy, which was a long strip nine rods wide east and west. He died in 1871, and by his will devised the land in equal shares to his seven children, among whom were Thomas Howes, junior, and Francis Howes. In 1876 six of the children, as part of a partition *in pais*, conveyed to the seventh child, Francis, the west part of the locus, five and one quarter rods wide east and west. In this deed the east boundary is by land of Thomas Howes "56 2/11th rods to the Sea." Later in the same year Francis conveyed to Thomas Howes, junior, this west part of the locus. In this deed also the property was bounded on the east by land of Thomas Howes. There is no deed of record from the other heirs of the original Thomas Howes to Thomas Howes, the younger, of the east part of the locus. The judge found and ruled, however, that the description of the land in the deed to Francis, taken as a whole, is evidence of a lost grant and works an estoppel against both the grantors and the grantee from making a valid claim of ownership to the east portion of the locus. In 1895 Thomas Howes, junior, conveyed the entire locus (including both the west part conveyed to him by Francis, and the east part called his in his deeds to and from Francis) to William H. Drury. In 1898 William H. Drury, by recorded

deed, conveyed the entire locus to one Carter, under whom the petitioner rightly claims according to the examiner's report.

The judge states in his decision that the respondent Porch presented the following evidence supporting his claim of title. In 1905 William H. Drury, by a recorded deed, conveyed to John R. Leavitt the entire locus bounding it on the east by land formerly of Nehemiah Wixon "being one of the parcels convey'd to me by deed of Thomas Howes dated Aug. 26, 1895, . . . and the same has not before been convey'd by me." Recent descriptions have bounded the locus on the east by land of Nehemiah Wixon, now land of Porch. The respondent put in evidence a deed from Wixon to John R. Leavitt given in 1903 conveying land to the east of the locus. In 1908 Leavitt, by recorded deed, conveyed to Herbert S. Newhall a parcel of land describing and intending to convey the westerly part of the land conveyed to him by Nehemiah Wixon, and also the land conveyed to him by Drury. In 1918 Newhall deeded the same described land to the respondent Porch. Porch also put in evidence two recent deeds to himself, one given in 1927, and the other in 1928, describing the east part of the locus, of two one-seventh interests therein formerly owned, one by Mary A. Gage, and the other by Ann A. Crowley, who were two of the seven children of the elder Thomas Howes, the grantors in said deeds alleging they were the sole heirs at law of Mrs. Gage and Mrs. Crowley.

The judge ruled that the respondent Porch took title with legal notice of the deed from Drury to Carter although he found that Porch had no actual notice of that deed until shortly before this petition was filed. Porch testified that he made no examination in the registry of deeds at the time of his purchase from Newhall in 1918. The judge further states in his decision that the respondent Porch offered evidence tending to show acquisition of title to the locus by adverse possession, but if the bringing of this petition was a legal interruption of possession, "sufficient time had not elapsed at that date . . . to accomplish an ouster of those claiming under the record title, starting from the date of the

spurious deed to Newhall in 1908." No evidence of adverse possession was offered before that date. The judge ruled "as matter of law that the bringing of this petition and proceedings thereunder interrupted the respondent's disseisin not later than the time when notice was served on the respondent and also posted on the land. After these events the element called 'peaceable' no longer pervaded the respondent's occupation. . . . If the foregoing ruling is erroneous then the respondent's twenty years had run at the date of the trial — May 24, 1933 — and he claims, because the land described in the spurious deed from Drury to Leavitt was by Leavitt included as one parcel (in his deed to Newhall) with the adjoining land on the east which the grantor owned, that his possession of the whole tract must be presumed, however pale the actual color of possession." The judge found that the substituted petitioner has the title proper for registration, and ordered a decree subject to a public way over the locus, and a mortgage to the Bass River Savings Bank, and a second mortgage to the original petitioner. From these findings the respondent appealed.

It is plain that the respondent Porch obtained no title to the locus by his deed from Newhall in 1918, and no contention is made by the respondent to the contrary.

When the deed was given by William H. Drury to John R. Leavitt in 1905, there was a deed of record of the same premises from Drury to Carter, recorded in 1898. If, therefore, Porch has any title to any part of the locus, it is by virtue of his deeds of 1927 and 1928 hereinbefore referred to, or by reason of adverse possession. Since no evidence was offered of adverse possession by the respondent prior to the date of the deed from Leavitt to Newhall in 1908, the period of twenty years would not have run until 1928, which was between the date of the petitioner's petition and the dates of the hearing and the order for the decree. The question then is whether the bringing of the petition for registration of title to land, issuing a citation thereon, giving notice by registered mail, and posting notice on the land serve to interrupt the adverse possession of one claiming title adversely to the petitioner. No case decided by this court,

or in other jurisdictions dealing with this precise question where there is a similar system of title registration, has been found. There are, however, two analogous situations. It has been held in this Commonwealth that in real actions judgment must be rendered upon the state of the title as it existed at the date of the writ, and that adverse possession is interrupted at that time, provided the plaintiff is ultimately successful. These cases all relate to writs of entry. See *Andrews* v. *Hooper*, 13 Mass. 472; *Hall* v. *Bell*, 6 Met. 431, 433; *Butrick, petitioner*, 185 Mass. 107; *Barrell* v. *Britton*, 258 Mass. 383, 388. The other class is found in petitions for partition. *Butrick, petitioner, supra*, was a petition for partition and it was there held that one who was in possession of real property for twenty years before the trial of a petition for partition might appear and object, even if he was not in possession for twenty years before the date of the petition. This doctrine was supported by a line of cases decided by the Supreme Judicial Court of Maine. *Tilton* v. *Palmer*, 31 Maine, 486. *Saco Water Power Co.* v. *Goldthwaite*, 35 Maine, 456. *Brackett* v. *Persons unknown*, 53 Maine, 228. *Richardson* v. *Watts*, 94 Maine, 476. These cases are to be distinguished in their facts from the case at bar.

It is expressly provided by G. L. (Ter. Ed.) c. 185, § 53, that no title to registered land shall be acquired by adverse possession. The distinction between the two proceedings is apparent, and it is evident that a petition to register title to land is more closely analogous to a writ of entry than to a petition for partition. There seems to be no sound reason for a distinction between a writ of entry and a petition to register title to land with regard to the interruption of adverse possession. The evident purpose of the Land Court act is to provide a method of making titles to land certain and indefeasible, and that purpose can be best served by making the decree relate back to the date of the petition, as prevails in nearly all forms of action. There is nothing in the statute itself to the contrary, and the argument of the respondent does not require a different conclusion. The findings of the judge plainly show that the adverse possession of the respondent was interrupted

by the filing of the petition for registration of title, and for that reason no title thereby was acquired.

However, it is clear that the respondent Porch by the deeds to him received in 1927 and 1928 from the sole heirs at law of Mary A. Gage and Ann A. Crowley, two of the seven children of the first Thomas Howes, obtained a valid title to two undivided one-seventh interests in the east portion of the locus. Whereas the description of the west part of the locus, contained in the deed of the six children of Thomas Howes, senior, to the seventh child, Francis, may, as ruled by the judge, be evidence of a lost grant and work an estoppel against both the grantors and the grantee from the making of a valid claim of ownership in the land, a *bona fide* purchaser without notice would not be so estopped. The case of *Earle* v. *Fiske*, 103 Mass. 491, is in point upon this question. In that case it was held that an unrecorded deed under Gen. Sts. c. 89, § 3, is not valid after the death of the grantor, as against one holding by a recorded deed from the grantor's heir, without notice of the former deed. In that case it was said at page 494: "As a purchaser without notice, the plaintiff is in a position to say that the unrecorded deed had no legal force or effect; that she died seised; that the property descended to Benjamin, her son and sole heir at law. Upon that assumption, his deed would take precedence over the unrecorded deed of his mother . . . ." In the case at bar the respondent Porch took from the sole heirs at law of those who once were each seised of a one-seventh interest in the locus and, so far as appeared from the records of the registry of deeds, died so seised. The respondent was not charged with notice of the description of the west portion of the locus in the deed to Francis Howes by his six brothers and sisters, and therefore he is not estopped to assert his title. G. L. c. 185, § 36, permits the respondent to set up a title acquired by deed after the petition was filed.

The order for a decree of registration should be modified so as to include in its present form only the west part of the locus, as conveyed by the deed to Francis Howes in 1876, and to declare that the petitioner's title to the east

or remaining part of the locus is an undivided five sevenths only, with title to the remaining two sevenths in the respondent Porch.

*So ordered.*