JOHN L. MARSHALL & another *vs.* JOSEPH P. FRANCIS & another.

Barnstable.  December 8, 1953, December 27, 1954. — February 15, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Mortgage*, Of real estate: foreclosure, merger, payment. *Adverse Possession and Prescription*. *Evidence*, Presumptions and burden of proof. *Deed*, Construction. *Land Court*, Exceptions: what questions open.

A foreclosure by a second mortgagee of land cut off the interest of the mortgagor but did not affect the rights of the first mortgagee. [285]

A deed of land to the holder of a first mortgage thereof by one whose equity of redemption had been cut off by foreclosure of a second mortgage conveyed no interest in the land and the grantee acquired nothing to merge with his mortgagee's interest. [285]

An issue not raised in the Land Court in a registration proceeding was not open in this court on a bill of exceptions. [285]

There was no presumption of payment of an undischarged first mortgage long outstanding of record on land where, even if there had been nonrecognition of the mortgage by the owners of the equity of redemption for twenty years after breach of condition, uninterrupted actual possession of the land by them for that period was not shown. [285–287]

The title of a first mortgagee of land was not cut off by adverse possession where there was neither uninterrupted actual possession of the land by

---

the owners of the equity of redemption for twenty years nor a clear re-
pudiation of the mortgagee's title by them.   [285, 287]

A deed, given by the children of a decedent, devisees by his will of an un-
divided two-thirds interest in his real estate, to their stepmother, de-
visee of the other one-third interest, of all "our" right, title and interest
in sundry lands including, with a recital that the "interest conveyed"
was "two-thirds undivided, inherited from our father," the "home-
stead premises . . . as bounded and described in . . . [a certain deed
to the decedent which in fact had conveyed nothing to him but which
had purported to convey a parcel later acquired by one of the children,
a son, separately by deed from another source] and also in" two other
deeds to the decedent which had described a parcel undoubtedly owned
by him at his death, conveyed only the common interest inherited by
the children from the decedent in the homestead premises as described
in such two deeds to the decedent and did not convey the parcel so ac-
quired and still owned by the son separately.   [287–289]

PETITION, filed in the Land Court on October 4, 1949.

The case was heard by *Cotton,* J.

*Richard H. Lee, (Jay W. Mead* with him,) for the respond-
ents.

*Henry F. Smith,* for the petitioners, submitted a brief.

SPALDING, J.   The petitioners, John L. Marshall and wife,
seek to register title to certain land in Truro.   The land
sought to be registered comprises lots A, B, C, D, and E
and will be referred to hereinafter as the locus.   The re-
spondents, devisees of Mary V. Marshall, second wife of
Antoine Marshall, father of John, deny title in the peti-
tioners and assert title in themselves for life.   The judge of
the Land Court rendered a decision granting registration of
the locus as prayed for in the petition, "subject to any
matters that may appear in the abstract [and] not here in
issue," and the respondents bring the case here by a bill of
exceptions.   G. L. (Ter. Ed.) c. 185, § 15.   G. L. (Ter. Ed.)
c. 231, § 142.

The petitioners claim title to the locus through a deed
from the heirs of one Silver to John dated January 17, 1901.
The respondents claim title through a deed to Mary dated
November 16, 1927, from John and his brother and sister.
The respondents' claim of title under the 1927 deed rests on
two grounds.   First, they contend that Antoine owned the
locus; that according to his will a two-thirds interest in it

passed to his three children and a one-third interest passed
to his widow Mary; and that the children conveyed their
interest to Mary in the 1927 deed. Secondly, the respond-
ents say that the deed was sufficient to convey any interest
which John had in the locus, whether or not he had inherited
the interest from his father.

The locus is part of a larger tract of land, hereinafter
sometimes called parcel X, to which there are two chains of
title. Concerning these chains the registry records reveal
the following: On October 21, 1863, Smith conveyed to
Rich, and on October 25, 1863, Rich gave a mortgage to
Smith for $350, the purchase price, payable in four years with
interest. On October 13, 1868, Smith assigned the mort-
gage to Antoine. That assignment shows that up to October
25, 1867, $300 with interest had been paid on the mortgage,
reducing the principal to $50. No discharge of this mort-
gage appears on the records and no mention of it is made in
any subsequent deeds in either Antoine's or John's chain.
Payment under the mortgage being due October 25, 1867,
and not paid, a right to foreclose accrued at that time for
breach of condition.

On May 10, 1877, Rich conveyed to Thomas free from all
encumbrances. Thomas conveyed to Roderick on Decem-
ber 30, 1882. On January 6, 1883, Roderick gave a mort-
gage to Antonio G. Rogers for $95, with interest at six per
cent, with a power of sale upon default. On December 1,
1883, Rogers foreclosed the mortgage on default of payment
of interest and conveyed to Nickerson, who on the same date
conveyed to Eunice G. Rogers, the wife of Antonio Rogers,
the mortgagee.

The transfer by Rich to Thomas was by warranty deed.
But since the security title held by Antoine through the
mortgage deed of 1863 was still outstanding, the most that
those holding under Rich acquired was the equity of re-
demption of the mortgagor.

The transactions above recited had been duly recorded
when on May 27, 1884, Roderick purported to convey all
his interest to Antoine by quitclaim deed. The respondents

in their fifth request asked for a ruling that by virtue of this deed there was a merger of the interest held by Antoine as mortgagee and the interest acquired from Roderick, and that the occupation of the land by Antoine operated as a foreclosure of the mortgage. The judge granted the request in so far as it related to merger, but found that there was no occupation of the land by Antoine. But there was no merger and no foreclosure by Antoine so the request could properly have been refused in its entirety. The foreclosure by Rogers in 1883 cut off Roderick's interest as mortgagor, but it could have no effect on the rights of the senior mortgagee, Antoine. Hence when Roderick purported to convey his interest to Antoine he had nothing to convey and there was nothing acquired by Antoine which would merge with the interest held by him as mortgagee. There is no evidence that Antoine ever entered on the property to foreclose, or took any other steps to foreclose the mortgage.

In 1884, Eunice G. Rogers, the purchaser from Nickerson, conveyed to Silver. But it does not appear that Silver or his heirs ever occupied the property. Up to 1901, therefore, when the heirs of Silver conveyed to John, there had been no adverse possession, nor twenty years' occupation after the right to foreclose accrued with nonrecognition of the mortgage. The former would have cut off Antoine's mortgage title when the statutory period had run, and the latter would have created a presumption of payment of the mortgage debt which, if not rebutted, would be a good defence to a foreclosure. *Bacon* v. *McIntire,* 8 Met. 87, 90. *Ayres* v. *Waite,* 10 Cush. 72, 76. *Cheever* v. *Perley,* 11 Allen, 584, 586. *Kellogg* v. *Dickinson,* 147 Mass. 432, 437. *O'Connell* v. *Everett,* 274 Mass. 602, 605.

In 1901 the heirs of Silver conveyed to John by a deed which describes the land by courses, distances, and monuments. The respondents argue that the deed was so vague in description as to make impossible the identification of the land conveyed and therefore the deed conveyed nothing. But that point does not appear to have been raised below, and is not open here. *Pierce* v. *DeQuattro,* 299 Mass. 533,

535.   *Bern* v. *Boston Consolidated Gas Co.* 310 Mass. 651, 656.

The judge found that in 1901 John entered into possession of parcel X and that Antoine's use of it thereafter was by neighborly permission.   These findings must stand unless unsupported by the evidence.   *Boston Five Cents Savings Bank* v. *Massachusetts General Hospital*, 255 Mass. 583, 586. *Sutcliffe* v. *Burns*, 294 Mass. 126, 132.   But we are of opinion that sufficient evidence to warrant such findings was lacking.   The judge had already found — but erroneously as pointed out above — that Antoine's mortgage title had been cut off.   Therefore, John did not in 1901 own the fee. Since up to 1901, at least, no one had established adverse possession against Antoine or a good defence to a foreclosure by him of the mortgage, we are concerned with whether what happened thereafter would have the effect of establishing either.

From 1877, when Rich conveyed to Thomas, up to the present there is no evidence that the mortgagor or anyone claiming under him ever recognized the mortgage.   But nonrecognition, without more, is not enough to create a presumption of payment; it must be accompanied by twenty years of actual possession.   *Bacon* v. *McIntire*, 8 Met. 87, 90.   *Ayres* v. *Waite*, 10 Cush. 72, 76.   *Cheever* v. *Perley*, 11 Allen, 584, 586.   *Kellogg* v. *Dickinson*, 147 Mass. 432, 437. *O'Connell* v. *Everett*, 274 Mass. 602, 605.   Concerning the fulfilment of the latter requirement the evidence is less certain.   John testified that before he took his deed Antoine had fenced in part of parcel X south of the locus, that both before and after 1901 Antoine used parcel X for making hay and pasturing cows, and that Antoine never asked John's permission nor paid rent.   After he took the deed, John fenced in the northern part of parcel X including the locus, and permitted his father to continue using that land as before.   This evidence is binding on John since there is no evidence more favorable to him.   *Johnston* v. *Senecal*, 329 Mass. 556, 557, and cases cited.   But at best this evidence is equivocal as establishing possession in one rather

than another.   In 1919 John moved to Pawtucket, Rhode Island, and returned "to visit every summer over a week end or for a week . . . at the old home and saw . . . [the] locus."   During this period Antoine continued to use the land as before.   Whether or not, prior to 1919, John's possession was such as to warrant a presumption of payment of the mortgage had the possession continued for the required twenty years, his going to Pawtucket and conduct thereafter interrupted such possession, and the conclusion of the judge that the presumption applied was not justified. The interruption of possession likewise destroyed the basis for the finding made by the judge that John acquired title by adverse possession.   Moreover, neither a mortgagor nor his grantee holds adversely to the mortgagee unless he has clearly repudiated the mortgagee's title, a fact not established here.   *Holmes* v. *Turner's Falls Co.* 150 Mass. 535, 549.   Am. Law of Property, § 15.7.   Hence John cannot be said to have acquired title by adverse possession and he is not entitled to the aid of the presumption that the mortgage has been paid.   In view of this conclusion the refusal of the respondents' eighth request becomes immaterial.[1]

On Antoine's death in 1924 all of his real property passed according to his will as part of the residue of his estate, two thirds to the children, John, Manuel, and Mary, and one third to Mary, the widow.   The children thus became tenants in common of an undivided two-thirds interest in the real property which Antoine owned at his death.

In 1927 the children made a deed to Mary which reads in part as follows:   "*We*, John L. Marshall, . . . Manuel J. Marshall, . . . and Mary L. Rose, . . . for consideration paid, grant to Mary V. Marshall, widow of Antoine Marshall, . . . all of *our* right, title and interest in the following pieces or parcels of real estate bounded and described as follows, viz, — First Parcel The homestead premises with the dwelling house, barns and all outbuildings thereon as

---

[1] "The fact that John L. Marshall was not assessed as owner of parcel X or any parcel having an area substantially the area of parcel X from 1884 to 1936 is some evidence that he was not in possession of parcel X during said period."

bounded and described in deed dated May 27, 1884 from
Frank L. Roderick to Antoine Marshall . . . and also in
deed from Mary Thomas to Antoine Marshall dated April
22, 1884 . . . and also in deed from Samuel B. Rich to
Antoine Marshall dated June 2, 1884 . . ." (emphasis
supplied).

The Rich and Thomas deeds to Antoine described a par-
cel which undoubtedly was owned by Antoine at his death.
There was some difficulty in identifying the land described
in the Roderick deed, and the respondents attempted at
one time to apply the description to a parcel not here in-
volved.    However, it is now no longer questioned that
the Roderick deed describes parcel X.    The grantors pur-
port to convey all *their* right, title and interest in parcel X
by incorporating in their deed the Roderick deed to their
father.    Such a deed conveyed only what they owned and
no more.    *Hoxie* v. *Finney*, 16 Gray, 332.    But the Roderick
deed to Antoine being invalid, as pointed out above, the
grantors as a group had no interest in parcel X.    However,
John in his own right by the 1901 deed from the heirs of
Silver owned parcel X.    This raises the question of what
interest the parties intended should pass, that is, whether
it was a group interest only or the interest which any one
of the grantors might own separately.    *Kendall* v. *Brown*,
7 Gray, 210.    *Ingalls* v. *Newhall*, 139 Mass. 268.    *Pride* v.
*Monaghan*, 282 Mass. 63.

There are no words in the granting clause suggesting that
the grantors or any one of them conveyed a separate in-
terest in the property described.    On the other hand, there
are many indications that the grantors were conveying only
their interest in common.    Using the Roderick deed by
which Antoine might have had title suggests that the
parties were thinking of Antoine as the source of the
grantors' interest.    Otherwise the natural reference would
have been to John's deed from the heirs of Silver.    The
1927 deed, after conveying ten other parcels, continues:
"The interest conveyed in the First . . . [parcel] is two-
thirds undivided, inherited from our father, Antoine Mar-

shall." From this clause it is apparent that the grantors intended to convey and the grantee expected to purchase only what the grantors had inherited from Antoine and no interest separately acquired and owned by John. This interpretation of the interest conveyed in the first parcel is further borne out by the deed as a whole. The obvious purpose of the deed with respect to all eleven parcels was to convey to the grantee the undivided interest held by the grantors which together with the interest inherited by the grantee would give her a fee in those properties.

It is clear thus that the parties did not contemplate the passage of any separate interest; and, the grantors having no common interest to convey under the Roderick deed, their grantee acquired no interest in the land described therein. The 1927 deed therefore conveys, so far as here material, only the homestead premises as described in the Thomas and Rich deeds, and the respondents' exception to the refusal of request numbered 9 is overruled.[1] The question of the judge's admission of parol evidence to determine the intent of the parties becomes immaterial. And those requests for rulings relating to the petitioners' adverse possession subsequent to 1927 also become immaterial since the petitioner John never conveyed his interest in the property. Other requests not dealt with in this opinion, in view of the conclusion reached, are no longer of importance. The respondents show no prejudicial error with respect to the requests for rulings.

The respondents, however, excepted to the decision rendered by the judge and this exception must be sustained. The findings are detailed and complete so that there is a separation of law and fact. *Leshefsky* v. *American Employers' Ins. Co.* 293 Mass. 164, 166–167. *Muir Brothers Co.* v. *Sawyer Construction Co.* 328 Mass. 413, 414–415.

---

[1] "When the petitioners joined in the warranty deed of November 16, 1927, to Mary V. Marshall, they conveyed to her all of their right, title and interest, whatever it might be in the premises included in the description in the deed from Frank L. Roderick to Antoine Marshall, dated May 27, 1884, recorded B. 146, p. 591, Barnstable registry of deeds."

From what has been said the decision was erroneous to the extent that it did not order the locus to be registered subject to the undischarged mortgage of 1863. The decree of registration should provide that the petitioners' title is subject to this mortgage. In other respects the decree is to be in conformity with the decision below.

*Exceptions sustained.*