In re Theodore DLOTT, Debtor.

James W. CLARK, Plaintiff,

v.

Herbert C. KAHN, Trustee

and

Theodore Dlott, Debtor, Defendants.

Bankruptcy No. 79–2181–L.
Adv. No. 81–0819.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 19, 1983.

John M. Mullahy, Natick, Mass., for debtor.

Francis G. McGee, McGee & Capobianco, Natick, Mass., for plaintiff.

Herbert C. Kahn, Boston, Mass., trustee.

## MEMORANDUM

THOMAS W. LAWLESS, Bankruptcy Judge.

The parties have stipulated to the following facts: On November 10, 1964, the Plaintiff, James W. Clark (Plaintiff), and the Debtor, Theodore Dlott (Debtor), by means of a declaration of trust created a real estate trust named the Nobscott Investment Trust (Trust). The Plaintiff and the Debtor were designated trustees and the beneficiaries were the Plaintiff and the Debtor and their respective spouses. Under the terms of the Trust, the trustees were granted the "full, absolute and exclusive power, without direction or interference by the beneficiaries, to sell, mortgage, convey or otherwise dispose of any or all of the Trust property." The purpose of the Trust was to serve as a vehicle for the construction, sale and lease of primarily duplex homes in Framingham and Natick, Massachusetts. From November, 1964 until June, 1968, various properties held by the Trust were often conveyed to the Plaintiff and the Debtor as tenants-in-common for tax purposes.

On October 14, 1966, the Trust acquired title to the parcel of property that is subject to this dispute, Lot 84–A (the "Property"), and a deed to that effect was properly recorded. On April 26, 1967, the Plaintiff and the Debtor, as trustees of the Trust, conveyed the Property to themselves as tenants-in-common and a deed was recorded. On the same day, Plaintiff and the Debtor, as tenants-in-common, mortgaged the Property to the Natick Five Cent Savings Bank for a construction loan in the amount of $30,000.00 to enable the tenants-in-common to build a duplex home on the property. A mortgage to that effect was properly recorded. Subsequently, by deed dated June 27, 1968, the Plaintiff and the Debtor, as trustees of the Trust, purported to convey the Property solely to the Plain-

tiff. This transfer was also recorded. The parties have stipulated that "[a]t the time of this latter conveyance, Clark [Plaintiff] and Dlott [Debtor] were in the process of splitting up their 'partnership' involving duplex homes in which each conveyed to the other their respective interests therein on a basis of a swap off; i.e., one releasing to the other a property in exchange for a similar release by the other of a property of approximate equal value." Since the date of this purported transfer, the Plaintiff has treated the Property as his sole property; he has paid the mortgage, real estate taxes, insurance and all other expenses associated with the Property and he has received the rents without interference from the Debtor or any other third party. The Trust was terminated by an agreement which was recorded on November, 1972. All property transfers between the Plaintiff and the Debtor were consummated at that time, or in any event, no later than November 10, 1974. The state of the title to the Property became an issue in December, 1980, when a title search made pursuant to a purchase and sale agreement entered into by the Plaintiff and a third party revealed the title defect. Upon discovery of the Debtor's pending bankruptcy proceeding, the Plaintiff filed the instant complaint against the Trustee and the Debtor seeking a determination that the Debtor and/or Trustee's interest in the property is only a "technical" interest and an order compelling the Trustee's release of his interest in the property due to the mistake of the parties. After review of the applicable authorities, I find as follows:

## DISCUSSION

■ All parties agree that it was intended that the Debtor's interest in the Property be conveyed to the Plaintiff by means of the 1968 conveyance from the Trust to the Plaintiff. It is also undisputed that the Debtor, as the other trustee/beneficiary of the Trust, received consideration for the Trust's purported conveyance to the Plaintiff. The term "purported" is used advisedly to describe the second conveyance by the Trust because it is axiomatic that a

grantee acquires no title under a deed, when at the time the deed was executed, there was another deed of record of the same premises from the grantor to another. *McMullen v. Porch*, 286 Mass. 383, 190 N.E. 835 (1934). The second conveyance by the Trust was of no legal effect because the Trust, having previously conveyed the Property, was no longer able to convey that which it did not own. *See Marshall v. Francis*, 332 Mass. 282, 288, 124 N.E.2d 803 (1955). Accordingly, at the time of the filing of Debtor's bankruptcy petition, the Debtor was vested with legal title as a tenant-in-common with the Plaintiff.

■ It can be inferred from the agreed statement that Clarke and Dlott were mistaken as to the ownership of the property when the second conveyance by the Trust was executed. Both parties believed that the Trust still owned the Property and that they, as trustees of the Trust, had authority to convey the property to the Plaintiff. The parties believed that such a transfer would convey whatever legal and/or equitable interests the Debtor held in the Property to the Plaintiff. However, since they held the Property as tenants-in-common, the transfer was null and void. The parties' mutual mistake as to the ownership of the property resulted in the execution of the second transfer by the Trust which was ineffective to accomplish the parties' intention: the transfer of the Debtor's interest in the property to the Plaintiff. The Plaintiff seeks reformation of the deed on the established law in Massachusetts that where there is a conveyance of property for consideration that is ineffective to accomplish the intentions of the parties because of their mutual mistake, a court of equity will reform the deed to comply with the intentions of the parties. *See, e.g., General Builders Supply Co. v. Arlington Co-op Bank*, 359 Mass. 691, 271 N.E.2d 342 (1971); *Livingstone v. Murphy*, 187 Mass. 315, 72 N.E. 1012 (1905). *See also McNally v. Lanni*, 4 Mass.App.Ct. 789, 343 N.E.2d 442 (1976). However, it is equally well-established that equity will not order reformation if it appears that reformation

will prejudice the rights of intervening bona fide purchasers and those standing in similar positions without notice of the equitable charge against the property. *See, e.g., General Builders Supply Co. v. Arlington Co-op. Bank, supra; Hillside Co-op. Bank v. Cavanaugh,* 232 Mass. 157, 122 N.E. 187 (1919). While there is no actual bona fide purchaser or attaching creditor in this case, there is a trustee in bankruptcy against whom the Plaintiff's right of reformation must be measured.

In his brief, the Plaintiff argues that since he is considered the equitable owner of the property under Massachusetts law and the Debtor only "technically" owns a one-half interest in the Property, the Bankruptcy trustee is irrelevant to the Plaintiff's requested relief. While not directly stated, presumably Plaintiff's argument is based upon 11 U.S.C. § 541 which provides, in pertinent part, that:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

....

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The Plaintiff apparently urges that inasmuch as he holds the equitable interest in the Property and the Debtor holds only bare legal title under Massachusetts law, § 541(d) compels the conclusion that the real estate never became a part of the Debtor's estate. This argument has been raised before and has been soundly rejected on the basis that the trustee's avoiding powers under § 544 are not limited by § 541(d):

In any event, a reading and comparison of a § 541(d) and § 544 leads to the inescapable conclusion that § 541(d) does not represent a general limitation on the trustee's avoidance powers under § 544. Section 541(d) qualifies the trustee's right under § 541(a) to succeed to certain property interests possessed by the debtor at the time of the filing of his bankruptcy petition. In contrast, § 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various creditors and transferees of the debtor so as to avoid incomplete or improperly perfected transfers of the debtor and thereby insure an equality of distribution among the debtor's general unsecured creditors. *See, e.g.,* 4 L.King, *Collier on Bankruptcy* ¶541.01, 541–5 to 541–9 and ¶544.01, 544–2 to 544–4 (15th ed. 1982); 2 W. Norton, *Bankruptcy Law and Practice* §§ 29.01 and 30.01 (1982). Section 544(a) in fact contemplates that the debtor has no remaining interest in the property which is the subject of the avoided transaction. The trustee is thus given the ability to bring into the estate, in addition to the debtor's property as defined by § 541(a) and limited by § 541(d), any property which he can obtain through his avoidance powers under the Bankruptcy Code, including his ability to invalidate certain transfers by the debtor under § 544(a). *See* 11 U.S.C.A. §§ 541(a)(3), 550, 551 (West 1979).

*In re Anderson,* 30 B.R. 995, 1009–1010 (M.D.Tenn.1983). *See also Elin v. Busche,* 20 B.R. 1012, 1016–1017 (D.N.J.1982). Accordingly, it is necessary to consider the Plaintiff's equitable right to the Property vis a vis the bankruptcy trustee's powers under § 544(a).

■ Title 11 U.S.C. § 544(a) provides:

a) The trustee shall have, as of the commencement of the case, and without

regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

The Bankruptcy Code expanded the avoiding powers that a trustee had under the Bankruptcy Act by granting the trustee the status of a bona fide purchaser because some state recording statutes do not protect judgment creditors. *See* Teofan & Creel, *The Trustee's Avoiding Powers under the Bankruptcy Act and the New Code: A Comparative Analysis,* 85 Comm. L.J. 542, 545 (1980). The Code's grant of bona fide purchaser status to the Trustee has little substantive effect in the District of Massachusetts in situations such as in the case at bar because it is settled in the Commonwealth that "[a]n attaching creditor stands in the position of a purchaser for value, and, as a deed duly recorded takes precedence of a prior deed unrecorded, so an attachment, when duly made, has the effect of a prior purchase and takes precedence of a prior unrecorded deed." *General Builders Supply Co. v. Arlington Co-op Bank, supra,* at 696–697, and authorities cited therein. Because they are treated the same, for the sake of convenience the Court will refer to trustee's status as a bona fide purchaser of the Debtor at the time of the commencement of the case.

■ The trustee's status as a bona fide purchaser is "without regard to any knowledge of the trustee or of any creditor." The phrase "without regard to any knowledge" means without regard to any personal knowledge that the trustee may have of competing interests in the Debtor's property: these words do not nullify whatever protections holders of equitable interests may have under applicable state law. *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982); *In re Morse,* 30 B.R. 52 (Bankr. 1st Cir.1983); *In re Gurs,* 27 B.R. 163 (Bankr. 9th Cir.1983). Stated another way, section 544(a)(3) does not transform the trustee into a "super-priority creditor"; rather, the trustee may only defeat the Plaintiff's equitable interest in the Property if under Massachusetts law a bona fide purchaser (or attaching creditor) of the Debtor's interest in the subject Property would have prevailed over the Plaintiff as of the date of filing in bankruptcy. *Id.* Since reformation will not be ordered in Massachusetts against intervening bona fide purchasers and attaching creditors who do not have "notice" of the equitable right of reformation, the Court must consider Massachusetts' concept of "notice" as it applies to the facts at hand.

■ Massachusetts law provides that a conveyance of an estate in land is not valid against any person unless the transfer is recorded or unless that person has 'actual notice' of the unrecorded conveyance. M.G.L. c. 183 § 4. The statutory requirement of 'actual notice' has been strictly construed. *Richardson v. Lee Realty Co. v. Lee,* 364 Mass. 632, 635, 307 N.E.2d 570 (1974); *McCarthy v. Lane,* 301 Mass. 125, 128, 16 N.E.2d 683 (1938). Knowledge of facts which ordinarily would put a party upon inquiry is not enough. *Id.* If the Court was concerned with an unrecorded instrument of which it were claimed a subsequent purchaser had notice, knowledge of facts which might arouse suspicion

would not be sufficient to destroy the bona fides of the subsequent purchaser. *Richardson v. Lee Realty Corp., supra,* 364 Mass. at 634, 307 N.E.2d 570. Evidence of open occupation, possession and cultivation of land and enclosure by a party who has an unrecorded deed thereof, is not sufficient to warrant the inference that a third person had any notice of such deed. *Pomroy v. Stevens,* 52 Mass. 244 (1846). Strict construction of the notice requirements is a consequence of the intent of the registry laws to establish a record system upon which purchasers can rely. *Richardson v. Lee Realty, supra,* 364 Mass. at 635, 307 N.E.2d 570. "[P]urchasers should not be required to look beyond the registry of deeds further than is absolutely necessary." *Swasey v. Emerson,* 168 Mass. 118, 120, 46 N.E. 426 (1897).

■ In cases involving the equitable right of reformation of a deed or mortgage that arises out of the mutual mistake of the parties, the party seeking reformation must show "actual notice of the mutual mistake." *General Builders Supply Co., v. Arlington Co-op Bank, supra,* 359 Mass. at 697, 271 N.E.2d 342; *see McNally v. Lanni,* 4 Mass.App.Ct. 789, 343 N.E.2d 442 (1976). The two essential facts upon which the equitable right of reformation rests are first, the mutual mistake, and second, the agreement of the Debtor to convey all his interest in the land. *See Livingstone v. Murphy,* 187 Mass. 315, 318, 72 N.E. 1012 (1905). Thus, "[t]he main question is whether there was enough upon the record to give to attaching creditors and purchasers notice of this equitable right of the plaintiff, or at least to put them on their inquiry." *Livingstone v. Murphy, supra,* at 318, 72 N.E. 1012. It must be emphasized that we are concerned only with matters of record.[1] While Massachusetts courts have found, albeit somewhat infrequently, a party's *actual* notice of an unrecorded deed or a mistakenly discharged mortgage, in keeping with its long

history of zealous protection of its recording system, no Massachusetts court has found constructive knowledge or a duty to inquire from matters *outside the record.* Because this is the state of the law in Massachusetts and because the trustee is insulated from any actual, personal knowledge by § 544, the Court is prevented from looking to matters outside the record as affecting the trustee's status as a bona fide purchaser. Accordingly, I conclude that under these circumstances in the District of Massachusetts, the trustee's status as a bona fide purchaser can only be defeated if he would be charged with constructive notice of the second conveyance by the Trust; further, the trustee's rights can only be defeated if this second conveyance by the Trust is such that Massachusetts law would impose upon him either constructive knowledge of the Debtor's agreement to convey or at least a duty to inquire as to the true intentions of the parties.

As to the first issue, there is a substantial question whether the trustee would be charged with constructive notice of the second conveyance by the Trust. The chronological record in the instant case reveals: (1) a conveyance by the Trust to the Plaintiff and Debtor as tenants-in-common; (2) a mortgage by the tenants-in-common to the Natick Five Cent Savings Bank; and (3) a conveyance by the Trust to only the Plaintiff. In order for a prospective purchaser of the Debtor's interest in the Property to have discovered the second conveyance by the Trust and thus perhaps be put on notice of the Plaintiff's equitable right, the purchaser would have had to serach the record for conveyances made by the Trust beyond the period of its record ownership. Massachusetts has refused to impose such a duty on purchasers. *In Morse v. Curtis,* 140 Mass. 112, 2 N.E. 929 (1886), the facts were as follows:

(1) A owns Blackacre and mortgages it to B;

---

1. Massachusetts imposes knowledge upon bona fide purchasers and attaching creditors of all matters properly of record; whether this be

termed constructive or actual knowledge is a matter of semantics only.

(2) A then sells to C, who knows of the mortgage, and therefore takes subject to it;

(3) C records;

(4) B records;

(5) C sells to D, who has no actual knowledge of the mortgage.

The issue before the *Morse* court was whether D takes free from the mortgage from A to B. After discussing the manner in which conveyancers performed title searches under Massachusetts' grantor/grantee recording system, the Court rejected the notion that conveyancers should have to examine the title beyond a grantor's period of ownership:

> We do not think this is the practical construction which lawyers and conveyancers have given to our registry laws. The inconvenience of such a construction would be much greater than would be the inconvenience of requiring a person who has neglected to record his prior deed for a time, to record it, and to bring a bill in equity to set aside the subsequent deed, if it was taken in fraud of his rights. The better rule, and the least likely to create confusion of titles, seems to us to be that if a purchaser, upon examining the registry, finds a conveyance from the owner of the land to his grantor which gives him a perfect record title, complete by what the law at the time it is recorded regards as equivalent to a livery of seizin, he is entitled to rely upon such recorded title, and is not obliged to search the record afterwards made, to see if there has been any prior unrecorded deed of the original owners.

The validity of the *Morse* holding—that one does not have to check the grantor index beyond the period of ownership— might be questioned in view of the fact that its decision was primarily based upon the customary practices of conveyancers in 1886. Today, it is customary to run the grantor's name in the grantor index for a longer period of time than the period of

ownership because a lien for real estate taxes arises upon assessment and does not dissolve until three years and nine months after the first of January in the year of assessment, if there has been a conveyance by a recorded instrument during that time. M.G.L. c. 60 § 37 *et seq.* *See* Park, *Real Estate Law*, 28A Mass.Practice 508. Thus, it could arguably be said that a modern conveyancer's title search would disclose the second conveyance by the Trust and thus a bona fide purchaser from the Debtor would be considered to have constructive knowledge of its contents.[2] Even assuming this is the case, this is not the end of the Court's inquiry. It must be determined whether knowledge of the Trust's second conveyance would impart knowledge of the Debtor's agreement to convey or impose a duty to inquire.

In Massachusetts, a conveyance or encumbrance executed by one who has no interest in the property, and who is a stranger to the chain of title, does not constitute a cloud on the title. *In Nickerson v. Loud*, 115 Mass. 94 (1874), the non-record owner of the property recorded a signed document stating that he held certain real estate in trust for himself and others and he would dispute any title that the record owner might attempt to make. This statement was held not to constitute a cloud on the title and, whether recorded or unrecorded, the statement could not be evidence against the record owner, or used in favor of the person giving notice. Even assuming that *Nickerson* does not apply to the facts at hand because the Trust is not a "stranger to the chain of title" because it had at one time been a record owner of the Property, knowledge of the Trust's second conveyance does not impart knowledge of the Debtor's agreement to convey his tenancy-in-common interest in the Property to the Plaintiff. *In Livingstone v. Murphy*, *supra*, the relevant facts were as follows:

(1) Husband and Wife were record joint owners of a parcel of property;

**2.** The more difficult question, whether an attaching creditor of the Debtor's interest in the property would be charged with knowledge of the second conveyance by the Trust, need not be addressed in view of the Court's ultimate conclusion in this matter.

(2) Wife purported to buy her Husband's interest in the northern parcel of the Property at an execution sale against her Husband and a deed to that effect was recorded [However, the deed was invalid to transfer ownership from the Husband to the Wife, *see Stetson v. O'Sullivan*, 90 Mass. 321 (1864)];

(3) Wife granted a mortgage to the Plaintiff, with the Husband joining in only to release all rights of curtesy and a document to that effect was recorded [although in fact both the Husband and Wife signed the mortgage note];

(4) Subsequent to the above mortgage, there are several creditors who either as attaching creditors, mortgagees or grantees, acquired an interest in the land.

In an action brought by the Plaintiff mortgagee to reform the mortgage by compelling the Husband to execute and deliver a mortgage to the Plaintiff of the Husband's interest in the northern lot, the *Livingstone* court held that there was not enough on the record to give notice of the Husband's intent to give the Plaintiff a mortgage.

> Up to this time [the time of the Plaintiff's mortgage] the record only shows at most that Margaret [the Wife] received from the deputy sheriff a deed of the lot in question, for which she seems to have paid a valuable consideration; that from that time to the time of the plaintiff mortgage both Margaret and Jones acted as if the title to that lot was in Margaret; that the plaintiff in taking her mortgage, seems to have acted upon the same view. But that is not enough to put attaching creditors and subsequent purchasers upon their inquiry.... The plaintiff's mortgage proceeded upon the theory that Margaret owned the lot in her own right. So far as shown by the record, the loan was made to and the note was signed by Margaret alone.... It is going too far to say that the simple fact that a husband releases his curtesy in land described in a mortgage by his wife purporting to convey the land as hers is

notice that he has agreed to convey his own interest in the fee if it should turn out that he and not she is the owner.

*Livingstone v. Murphy, supra,* 187 Mass. at 319–320, 72 N.E.1012.

Applying the *Livingstone* rationale to the instant case, there is no indication from the record that the Debtor, the tenant-in-common, agreed to convey his interest in the property to the Plaintiff. All that can be discerned from the record is that the trustees of the Trust intended to convey the Trust's interest in the property to the Plaintiff. It is going too far to say that because that interest was nothing because of the earlier conveyance, that there is notice of an agreement by the Debtor to convey his interest in the Property to the Plaintiff. Assuming *arguendo* that a proposed purchaser of the Debtor's interest in the property at the time of the bankruptcy filing would be charged with notice of the second Trust conveyance, under Massachusetts law knowledge of this conveyance would not be constructive knowledge of the Debtor's agreement to convey his interest as a tenant-in-common to the Plaintiff, or impose upon a prospective purchaser a duty to inquire.

Accordingly, I find that judgment should enter for the Trustee on the Plaintiff's complaint. However, because I also find that the matters raised herein are such that this Court may not enter a final order, *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix Inc.,* 712 F.2d 1305 (9th Cir.1983), rehearing en banc granted (1983) 718 F.2d 971, this Court's Memorandum and proposed Order will be submitted to a United States District Judge for the District of Massachusetts for consideration consistent with this Court's limited jurisdiction. *See* Emergency Rule (e)(2)(A)(ii). Further proceedings consistent with this Memorandum and proposed Order, including any claimed rights to an accounting or other similar relief, will be

scheduled in due course upon completion of the District Court's review of this matter.